**AIR ROUTING INTERNATIONAL CORPORATION (CANADA), ARG Processing & Services, Inc. a/k/a Air Routing Group Card Services, Inc., Air Routing International Corporation, and AR Group, Inc., Appellants,**

v.

**BRITANNIA AIRWAYS, LIMITED, Appellee.**

No. 14–02–01167–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 31, 2004.

Rehearing Overruled Nov. 24, 2004.

Lynne Liberato, Joe H. Reynolds, Murry B. Cohen, Houston, for appellants.

S. Shawn Stephens, Jess H. Hall, Jr., Houston, for appellee.

Panel consists of Justices EDELMAN, FROST, and GUZMAN.

## OPINION

KEM THOMPSON FROST, Justice.

This is an attorney's fees case arising under the Texas Theft Liability Act ("Theft Act"), a relatively new statute that has a unique provision compelling the award of reasonable and necessary attorney's fees to a party that successfully defends against a claim under this act, without any prerequisite that the claim be found groundless, frivolous, or brought in bad faith. In this appeal, we review the trial court's determination that the successful parties are required to segregate their proof of attorney's fees for successfully defending against the Theft Act claim from the attorney's fees they incurred in defending against fraud, negligent-misrepresentation, and civil conspiracy claims brought by the same plaintiff. Under the Texas Supreme Court's legal standard in *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 11–12 (Tex.1991), we conclude the trial court erred in requiring segregation because these claims arose out of the same transaction and because the prosecution or defense of these claims entailed proof or defense of essentially the same facts.[1] Accordingly, we sever and reverse the part of the trial court's judgment awarding zero attorney's fees based on the failure to segregate, and we remand to the trial court for a determination of the amount of reasonable and necessary attorney's fees to be awarded to the parties successfully defending against the Theft Act claim. We affirm the remainder of the trial court's judgment.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Appellants Air Routing International Corporation and Air Routing International (Canada) had a contract with the Royal Bank of Canada ("Royal Bank") to operate certain aspects of a credit-card system used in the aviation industry to pay for ground handling and other services at various airports throughout the world. This credit-card system was known as the "Jet

---

1. For the sake of convenience, we sometimes refer to this determination of whether segregation is excused under *Sterling* as the "inextricably intertwined" exception. *See Sterling*, 822 S.W.2d at 11–12.

Card." [2]

Appellee Britannia Airways, Limited is a charter-airline company incorporated under the laws of England and Wales, with its principal place of business in Luton, England. At the times material to Britannia's claims, Britannia catered to vacation travelers and offered a variety of flights from the United Kingdom and Europe to destinations around the world. Britannia was a holder of the Jet Card and used it to purchase fuel, maintenance, and other services provided by various vendors at airports around the world. The Royal Bank issued a Jet Card to each aircraft in Britannia's fleet. The captain of the aircraft could use the Jet Card to make purchases from any vendor subscribing to the Jet Card system. After accepting the Jet Card, these vendors would submit invoices for charges through the Jet Card system, and would send the invoices to one of the appellants for processing. After processing the Jet Card invoices, the recipient would forward them to the Royal Bank, which would pay the vendors and send billing statements to Britannia. Significantly, Britannia believed that one of the Air Routing companies, in addition to processing these invoices, would "validate and verify" all charges before transmitting the invoices to the Royal Bank. Air Routing Canada contracted with an affiliated company, appellant ARG Processing & Services, Inc. a/k/a Air Routing Group Card Services, Inc. ("ARG") to process Jet Card invoices. Appellant AR Group, Inc. is a

holding company affiliated with the other three appellants.

In late 1998, Britannia learned that it had paid more than $8 million in Jet Card charges for services that had not been performed. Britannia paid these charges based on false and incorrect invoices for services allegedly provided by Nile Valley Aviation ("NVA"), a company that provided supervisory and handling services for Britannia in Egypt. Britannia filed this suit against appellants Air Routing International (Canada), ARG, Air Routing International Corporation, and AR Group, Inc. (collectively referred to herein as "Air Routing"). Britannia sought to recover more than $8 million in excess charges based on claims of fraud, negligent misrepresentation, civil conspiracy, and liability under the Theft Act. Three of the Air Routing parties asserted counterclaims against Britannia, seeking a declaratory judgment that they were third-party beneficiaries of certain contracts between Britannia and the Royal Bank.

Air Routing filed numerous motions for summary judgment, including a motion for summary judgment as to the Theft Act claim. On September 12, 2001, the trial court granted Air Routing's motion for summary judgment as to Britannia's Theft Act claim.[3] The trial court denied Air Routing's motions for summary judgment as to Britannia's other three claims. At trial in March of 2002, the trial court granted Air Routing's motions for directed verdict as to Britannia's negligent-misrep-

---

**2.** Later, the "Jet Card" became known as the "IATA Global Charge Card Programme." For the sake of convenience, we refer to this card as the "Jet Card" in this opinion.

**3.** Our record contains no order granting Air Routing's motion for summary judgment as to the Theft Act claim; however, it does contain a docket entry indicating the trial court granted this motion on September 12, 2001. We

are not basing this decision on the docket entry. Rather, the trial court's findings of fact indicate this motion was granted on September 12, 2001, and Air Routing and Britannia both agree on appeal that this motion was granted on this date. Therefore, we presume for the purposes of this appeal that the trial court granted this motion on September 12, 2001.

resentation and civil conspiracy claims, and the jury returned a defense verdict as to the fraud claim. The trial court denied relief as to the counterclaims for declaratory judgment.

The parties agreed to a bench trial as to the issue of the amount, if any, of reasonable and necessary attorney's fees that should be awarded to Air Routing under the Theft Act. Britannia and Air Routing agree that the Theft Act requires the trial court to award Air Routing reasonable and necessary attorney's fees for defending Britannia's Theft Act claim.

The Theft Act is unusual in Texas law in that it requires the court to award attorney's fees to a party who successfully defends a Theft Act claim, without any prerequisite that the claim is found to be groundless, frivolous, or brought in bad faith.[4] See TEX. CIV. PRAC. & REM CODE ANN. § 134.005(b) (Vernon 1997); *Johns v. Ram–Forwarding, Inc.*, 29 S.W.3d 635, 637–38 (Tex.App.-Houston [1st Dist.] 2000, no pet.) (holding Theft Act entitles defendant to recover reasonable and necessary attorney's fees in successfully defending Theft Act claim even if defendant does not recover any actual damages); Scott A. Brister, *Proof of Attorney's Fees in Texas*, 24 ST. MARY'S L.J. 313, 316 (1993) (stating that Texas statutes providing for recovery of attorney's fees generally do so for a party asserting a claim or to a party defending a claim that has been found to be groundless or brought in bad faith).

Air Routing moved the trial court for a take-nothing judgment as to Britannia's claims and for attorney's fees for its defense of the Theft Act claim. Britannia

responded by arguing that the defense of the Theft Act claim did not fall into any exception to the general rule requiring Air Routing to segregate the attorney's fees for defending the Theft Act claim from fees incurred in the defense of the other claims. At the bench trial on the attorney's fees issue, Air Routing presented numerous billing records and an affidavit establishing Air Routing's costs.[5] The trial court admitted this evidence without any objection from Britannia. Air Routing also called the billing attorney, Kenneth Broughton, as a witness. Broughton testified that Air Routing had incurred $1,909,753.70 in attorney's fees in this case up until September 12, 2001, when the trial court granted summary judgment as to the Theft Act claim. After reviewing the billing records, Broughton testified that $1,177,028.30 of these attorney's fees relate to Air Routing's defense of the Theft Act claim, which Broughton testified is inextricably intertwined with the defense of the fraud, negligent-misrepresentation, and civil conspiracy claims. Air Routing did not seek attorney's fees for any work performed on trial-court matters after September 12, 2001, and did not seek fees under the Theft Act relating to the declaratory-judgment counterclaims. Air Routing, however, also sought appellate attorney's fees.

Britannia presented no evidence in opposition to Air Routing's attorney's fees request. After the bench trial, the trial court ruled that Air Routing would have to segregate its fees for defending the Theft Act claim from its fees for defending the other claims. Despite this ruling and an-

---

4. Air Routing also sought attorney's fees in the trial court under the Texas Declaratory Judgment Act based on the counterclaims; however, the trial court ruled that Air Routing was not entitled to attorney's fees based on the counterclaims for declaratory judgment,

and Air Routing has not challenged this ruling on appeal.

5. There is no issue on appeal regarding court costs, which the trial court awarded to Air Routing.

other opportunity to segregate, Air Routing declined to segregate the fees, maintaining its position that applicable law did not require such segregation.

The trial court signed a final judgment ordering that Britannia take nothing on its claims, that Air Routing take nothing on the counterclaims for declaratory relief, and that Air Routing not recover any attorney's fees. In this judgment, the trial court stated that the Theft Act claim is not inextricably intertwined with and does not arise out of the same facts or occurrences as Britannia's other claims against Air Routing. The trial court issued findings of fact and conclusions of law, which essentially reject Air Routing's contention as to the "inextricably intertwined" exception and provide that the only fees potentially recoverable are those that Air Routing segregates and shows to have been incurred in connection with the Theft Act claim. Ultimately, the trial court found that, because Air Routing would not adequately segregate those fees incurred in connection with its defense against the Theft Act claim, it is not entitled to recover any attorney's fees in this litigation.

## II. Issues Presented

Britannia has not appealed the trial court's judgment. On appeal, Air Routing presents the following issues for review:

(1) Did the trial court err in failing to award attorney's fees to Air Routing for its successful defense of the Theft Act claim and the claims inextricably intertwined with the Theft Act claim?

(2) Did the trial court err in finding that Air Routing's defense of Britannia's fraud, conspiracy, Theft Act, and negligent-misrepresentation claims are not inextricably intertwined?

(3) Did the trial court err in refusing to award Air Routing appellate attorneys' fees?

(4) Are the trial court's findings of fact related to Air Routing's attorney's fees legally or factually insufficient or against the great weight and preponderance of the evidence?

## III. Standard of Review

In this appeal, the main issue is whether the trial court correctly determined that Air Routing had to segregate attorney's fees incurred in its defense of the Theft Act claim from attorney's fees incurred in its defense of Britannia's other claims based on the alleged inapplicability of the "inextricably intertwined" exception. Whether a party seeking attorney's fees must segregate fees generated in connection with work relating to one claim or party from fees generated in connection with work relating to other claims or parties is a difficult issue that is frequently litigated. *See* Brister, 24 St. Mary's L.J. at 342 (stating that "[o]ne of the thorniest and most frequently litigated issues involved in proof of attorney's fees concerns segregation of recoverable fees"). The Texas Supreme Court established the legal standard for determining the applicability of the so-called "inextricably intertwined" exception to the segregation requirement in the *Sterling* case. *See Stewart Title Guar. Co. v. Sterling,* 822 S.W.2d 1, 11–12 (Tex.1991). Application of this standard requires determinations as to whether the claims in question arise out of the same transaction and whether they depend on proof or denial of essentially the same facts. *See id.* These determinations, in turn, involve an analysis of both the claims asserted and the facts upon which these claims are based. *See id.* These determinations, to some extent, involve an analysis of facts, and the trial court below made these determinations by "findings of fact." Nonetheless, the Texas Supreme Court has in-

dicated that (1) the trial court, not the jury, determines the segregation issue, and (2) appellate courts review this determination de novo.[6] *See id.* at 11–12; *Houston Livestock Show and Rodeo, Inc. v. Hamrick,* 125 S.W.3d 555, 585 (Tex. App.-Austin 2003, no pet.) (stating that "[w]hether fees can be segregated between various claims and parties is a question for the court" and using language appropriate to a de novo review); *see also* Brister, 24 St. Mary's L.J. at 351 (stating that "the court decides which claims must be segregated...."). In *Sterling,* the Texas Supreme Court reversed the trial court's implied segregation determination and addressed the appropriate remedy when "an appellate court determines that segregation was required." *See Sterling,* 822 S.W.2d at 11. Rather than remanding to the court of appeals to conduct an analysis of the sufficiency of the evidence to support the trial court's segregation determination, the Texas Supreme Court held that "[f]ollowing a review of the record, we conclude that the attorney's fees are capable of segregation." *See id.* at 12. Accordingly, we conduct a de novo review of the trial court's segregation determination.[7]

## IV. ANALYSIS

### A. Did the trial court rule that Air Routing should recover no attorney's

fees because the trial court found "$0" to be the amount of reasonable and necessary attorney's fees, regardless of the court's ruling regarding the "inextricably intertwined" exception?

Britannia asserts that the trial court correctly found the "inextricably intertwined" exception to be inapplicable; however, Britannia's primary argument on appeal is that legally and factually sufficient evidence exists to support the trial court's determination that zero is the amount of reasonable and necessary attorney's fees that should be awarded to Air Routing under the Theft Act, independent of Air Routing's failure to segregate attorney's fees to the trial court's satisfaction. Britannia's argument presumes that an independent reason why the trial court awarded zero fees was that it found that number to be the amount of reasonable and necessary attorney's fees for Air Routing's defense of the Theft Act claim. After reviewing the record, we disagree and conclude that the trial court based its award of zero fees solely on Air Routing's failure to segregate attorney's fees to the trial court's satisfaction.

The trial court's judgment states that Britannia's Theft Act claim is not inextricably intertwined with its other claims and that Air Routing has declined to segregate

6. Writers on the subject have observed that there are many factors to consider in determining whether the segregation determination should be a matter of law decided only by the trial court or an issue of fact to be resolved by the finder of fact. *See, e.g.,* Brister, 24 St. Mary's L.J. at 351–52 (suggesting that it might be better to eliminate the judicial determination of the segregation issue and allow juries to consider whether the fees are intertwined as part of their factual determination of the amount of reasonable and necessary attorney's fees). As an intermediate court of appeals, we are bound by the Texas Supreme Court's resolution of this issue, so we express

no opinion in this regard and leave any consideration of changing the law to our high court. *See In re K.M.S.,* 91 S.W.3d 331 (Tex. 2002).

7. Although Britannia initially asserted that we should review this determination under a legal and factual sufficiency standard of review, in a post-submission letter brief, Britannia now has agreed that the de novo standard of review applies to this issue. Therefore, at present, the positions of all parties are consistent with our determination that we should review the segregation issue de novo.

the fees attributable to defending against the Theft Act claim, despite having been given an opportunity to do so by the court. Accordingly, the trial court found that Air Routing's evidence did not establish any amount of segregated fees as to the defense against the Theft Act claim. Therefore, the trial court ordered that Air Routing not recover any attorney's fees incurred at the trial court level.

In its findings of fact and conclusions of law, the trial court makes many of the same findings and, in addition, states:

- Air Routing declined to further segregate because it claimed it was not required by law to do so.
- Air Routing's requested fees were not reasonably or necessarily incurred in connection with Air Routing's defense of the Theft Act claim; rather, most of those fees were not related to the defense of that claim (finding of fact 13).
- Because Air Routing would not segregate its fees further, it failed to prove up any amount of fees to which it is entitled, so it cannot recover any attorney's fees.
- Air Routing is awarded "$0" as a reasonable and necessary attorney's fee in this litigation. Because no appeal on the attorney's fees issue would be necessary if Air Routing had segregated its fees as requested by the trial court, Air Routing is awarded "$0" as a reasonable and necessary appellate fee. (conclusion of law 7).

█ Although conclusion of law 7 states that Air Routing is awarded zero dollars as a reasonable and necessary fee for litigation in the trial court, reading the findings of fact and conclusions of law as a whole and in context, it is clear that the trial court did not find that "$0" was a reasonable and necessary amount of fees to award for the defense of the Theft Act claim. If the trial court had determined that a reasonable and necessary defense of the Theft Act claim would have resulted in no fees being incurred, it would not have insisted that Air Routing segregate its fees because there would have been nothing to segregate. Indeed, finding of fact 13 indicates that the trial court believed that some fees were reasonable and necessary. *See* Finding of Fact 13 (stating "the majority of those fees [requested by Air Routing] were not related to the defense of [the Theft Act] claim"). Further, if the trial court had decided that "$0" was a reasonable and necessary fee for the trial work regardless of the segregation issue, it would not have stated in conclusion of law 7 that the only reason for an appeal as to attorney's fees is the segregation issue. Under Texas law, if the trial court and a party seeking attorney's fees disagree over the applicability of the "inextricably intertwined" exception, the trial court may conclude that segregation is required and that, without segregation, the court does not have sufficient information to determine the amount of reasonable and necessary fees. If the party seeking fees refuses to segregate, the trial court may be forced to deny recovery of fees, as the trial court did in this case.

Based on both the judgment and the findings of fact, we conclude that the only basis for the trial court's award of zero dollars in fees was its ruling regarding the "inextricably intertwined" exception and Air Routing's refusal to segregate further. The trial court did not determine the amount of reasonable and necessary attorney's fees that should be awarded under the Theft Act. Therefore, Britannia's various arguments in support of the trial court's alleged determination of this issue are not relevant to our disposition of this appeal.

**B. Did the trial court err in its determination regarding the "inextricably intertwined" exception?**

Air Routing asserts the trial court erred in determining that its defense of Britannia's Theft Act claim was not inextricably intertwined with its defense of Britannia's claims for fraud, negligent misrepresentation, and civil conspiracy. As discussed above, we review the trial court's determination of this issue de novo. To analyze this issue, we must decide issues raised by the parties regarding the legal standard to apply in making this segregation determination. Then, we apply that legal standard to the record in this case to determine if the trial court reversibly erred in determining that segregation as between the Theft Act claim and the remaining claims is required.

**1. What is the proper legal standard for determining whether the "inextricably intertwined" exception applies?**

▇▇▇ The parties, most courts addressing this issue, and this court all agree that the *Sterling* case provides the legal standard for determining segregation issues like the one in this case:

A recognized exception to this duty to segregate arises when the attorney's fees rendered are in connection with claims arising out of the same transaction and are so interrelated that their "prosecution or defense entails proof or denial of essentially the same facts." *Flint & Assoc. v. Intercontinental Pipe & Steel, Inc.*, 739 S.W.2d 622, 624–25 (Tex.App.-Dallas 1987, writ denied). Therefore, when the causes of action involved in the suit are dependent upon the same set of facts or circumstances and thus are "interwined to the point of being inseparable," the party suing for attorney's fees may recover the entire amount covering all claims. *Gill Sav. Ass'n v. Chair King, Inc.*, 783 S.W.2d

674, 680 (Tex.App.-Houston [14th Dist.] 1989), *modified,* 797 S.W.2d 31 (Tex. 1990)....

*Sterling,* 822 S.W.2d at 11–12. The difficulty arises in deciding how to apply this legal standard. Britannia makes two alternative arguments regarding the legal standard for the "inextricably intertwined" exception:

(1) *The Legal Elements Standard.* In determining whether the defense of the claims entails proof or denial of essentially the same facts, this court must consider the facts Britannia would have to prove for each element of the different claims to see if the claims are proven by the same factual allegations and *legal elements.*

(2) *The Impracticability Standard.* To show that it falls under the "inextricably intertwined" exception, a party should have to introduce specific evidence demonstrating that attempts were actually made to separate the fees by claim at the time the fees were incurred and that further separation of the time was impracticable.

The trial court's findings of fact 9–11 and conclusions of law 3–7 show that the trial court based its segregation ruling on both of these legal standards. We conclude that the two legal standards advocated by Britannia are not proper under current Texas law and that Air Routing's position regarding the legal standard is correct.

▇▇ Britannia correctly asserts that several courts of appeals, in applying the *Sterling* standard, have compared the essential elements of the claims in question. *See Geodyne Energy Income Production P'ship I–E v. Newton Corp.,* 97 S.W.3d 779, 789–90 (Tex.App.-Dallas 2003, pet. granted) (holding segregation was required, in part because the "claims have

significantly different elements than [the claim for which attorney's fees are recoverable]"); *Z.A.O., Inc. v. Yarbrough Drive Cent. Joint Venture*, 50 S.W.3d 531, 550–51 (Tex.App.-El Paso 2001, no pet.) (holding segregation was necessary because breach-of-contract claim required proof of different elements than other claims); *AU Pharm., Inc. v. Boston*, 986 S.W.2d 331, 337 (Tex.App.-Texarkana 1999, no pet.) (holding trial court should have required segregation because tort claims "entailed proof of facts unnecessary for proof of [the] contract claim...."); *Aetna Cas. & Sur. v. Wild*, 944 S.W.2d 37, 41 (Tex.App.-Amarillo 1997, writ denied) (holding that contract and tort claims were capable of segregation in part because these claims required proof of different elements); *Panizo v. YMCA of the Greater Houston Area*, 938 S.W.2d 163, 169–71 (Tex.App.-Houston [1st Dist.] 1996, no writ) (holding party should have segregated attorney's fees for fraud claim from attorney's fees for contract claim based largely on the difference between the essential elements of each claim). However, we decline to apply this approach to determining segregation because it contradicts the legal standard articulated in *Sterling* as well as precedent from this court and the majority of cases on this issue from other courts of appeals.[8] *See Sterling*, 822 S.W.2d at 11–12; *Goebel v. Brandley*, 76 S.W.3d 652, 657–58 (Tex.App.-Houston [14th Dist.] 2002, no pet.) (holding that claimant could recover all of his attorney's fees because declaratory-judgment claim in boundary dispute was based on the same facts as his claims for adverse possession, trespass, and trespass to try title), *disapproved of on other grounds by Martin v. Amerman*, 133 S.W.3d 262, 268 (Tex.2004); *Gill Sav. Ass'n v. Chair King, Inc.*, 783 S.W.2d 674, 680 (Tex.App.-Houston [14th Dist.] 1989) (holding claimant did not have to segregate fees between fraud and contract claims because both claims were based on the same set of facts and circumstances), *modified on other grounds*, 797 S.W.2d 31 (Tex.1990); *Panizo*, 938 S.W.2d at 171–72 (O'Connor, J., dissenting) (stating that need to prove scienter for fraud claim did not change fact that fraud and contract claims were both based on essentially the same facts and correctly stating that analysis of majority in *Panizo* created conflict with Fourteenth Court of Appeals as to proper standard for analyzing segregation issue).

Although, to some extent, the legal elements of the claims will be factored into the segregation analysis in determining whether the prosecution or defense of the claims entails proof or denial of essentially the same facts, the plain meaning of *Sterling's* legal standard does not require that the legal elements of the claims be the same or substantially similar. *See Sterling*, 822 S.W.2d at 11–12; *Flint & Assocs. v. Intercontinental Pipe & Steel, Inc.*, 739 S.W.2d 622, 624–25 (Tex.App.-Dallas 1987, writ denied) (holding that successful sworn-account plaintiff did not have to segregate its attorney's fees for prosecuting its claim from its fees for defending a DTPA counterclaim because the claims

---

8. The majority of cases from courts of appeals applying the *Sterling* standard for segregation have focused on the facts at issue in the case and not on the differences between the legal elements among the claims asserted. *See, e.g., Park Cities Ltd. P'Ship v. Transpo Funding Corp.*, 131 S.W.3d 654, 662 (Tex.App.-Dallas 2004, pet. filed); *Hamrick*, 125 S.W.3d at 585–86; *Willis v. Donnelly*, 118 S.W.3d 10, 46–47 (Tex.App.-Houston [14th Dist.] 2003, pet. filed); *Young v. Neatherlin*, 102 S.W.3d 415, 420 (Tex.App.-Houston [14th Dist.] 2003, no pet.); *West Beach Marina, Ltd. v. Erdeljac*, 94 S.W.3d 248, 268 (Tex.App.-Austin 2002, no pet.); *Chilton Ins. Co. v. Pate & Pate Enterprises, Inc.*, 930 S.W.2d 877, 896 (Tex.App.-San Antonio 1996, writ denied).

arose out of the same transaction and were so interrelated that their prosecution or defense entailed proof or denial of essentially the same facts) & *id.* at 628 (Baker, J., dissenting) (dissenting from segregation ruling and arguing that segregation should have been required because the elements of the account claim are different from the elements of the DTPA counterclaim). If there were such a requirement, then there would almost never be an exception to segregation under *Sterling* because no two claims have the same elements, and not many claims have similar legal elements. In several cases, Texas courts have found that no segregation is required between fraud and contract claims based on essentially the same facts, without taking into account the fact that fraud claims require scienter and reliance and breach of contract claims do not. *See, e.g., Gill Sav. Ass'n,* 783 S.W.2d at 680. Therefore, we reject Britannia's analysis and that of our sister courts of appeals to the extent they add to the *Sterling* analysis a requirement that the essential elements of the claims be the same or substantially similar.

■ Britannia also argues Air Routing was required to introduce specific evidence demonstrating that attempts were actually made to separate the fees by claim at the time the fees were incurred and that further segregation of the fees was impracticable. Britannia argues that this is consistent with federal law, under which an attorney's fees claimant "should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983) (addressing recovery of attorney's fees under 42 U.S.C. § 1988). However, we are applying the *Sterling* legal standard, which is different from the federal standard for determining whether segregation is required. *See id.,* 461 U.S.

at 440, 103 S.Ct. at 1943 (stating that "[w]here the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee" and that "[w]here a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised"). Furthermore, federal law requires the party seeking attorney's fees to submit detailed documentation of the services performed, which, in most cases, would consist of billing records or invoices. *See id.,* 461 U.S. at 433, 103 S.Ct. at 1939 (stating that "[w]here the documentation of hours is inadequate, the district court may reduce the award accordingly") & 461 U.S. at 440, 103 S.Ct. at 1943 (Burger, C.J., concurring) (stating "I read this Court's opinion as requiring that when a lawyer seeks to have his adversary pay the fees of the prevailing party, the lawyer must provide detailed records of the time and services for which fees are sought"). Under Texas law, however, billing records need not be introduced to recover attorney's fees. *See Holmes v. Concord Homes, Ltd.,* 115 S.W.3d 310, 316–17 (Tex.App.-Texarkana 2003, no pet.) (affirming award of attorney's fees based on testimony of counsel without the introduction of any billing records); *Schlager v. Clements,* 939 S.W.2d 183, 191–93 (Tex. App.-Houston [14th Dist.] 1996, writ denied) (same); Brister, 24 St. Mary's L.J. at 331 (stating that "billing records do not have to be introduced to support a fee recovery"). Therefore, we find Britannia's reliance on federal law to be misplaced.

Britannia also asserts that its second alternative argument regarding the legal standard is supported by the Texas Supreme Court's statement that "[a] failure to segregate attorney's fees in a case con-

taining multiple causes of action, only some of which entitle the recovery of attorney's fees, can result in the recovery of zero attorney's fees." *Green Intern., Inc. v. Solis,* 951 S.W.2d 384, 389 (Tex.1997). Although Britannia asserts this is a holding, because the *Solis* court found that the objection based on failure to segregate was waived, this statement is not part of the holding. *See id.* It is a nonbinding obiter dictum. *See Edwards v. Kaye,* 9 S.W.3d 310, 314 (Tex.App.-Houston [14th Dist.] 1999, pet. denied) (distinguishing between a nonbinding obiter dictum and a judicial dictum). Furthermore, while at some point in the litigation, a repeated refusal to segregate fees might result in an award of zero, this statement from *Solis* appears in part to contradict a separate holding from *Sterling. See Sterling,* 822 S.W.2d at 11–12 (holding that if appellate court determines segregation was required but not done, proper remedy is not that party recover no fees but that judgment be reversed and the case remanded for more evidence).[9] We conclude that this obiter dictum from *Solis* does not affect the legal standard we must apply to the segregation determination at issue in this case.

■ Although the segregation-exception inquiry is often referred as a determination of whether claims are "inextricably intertwined," the language used in *Sterling* indicates that if a party proves that the claims arise out of the same transaction and are so interrelated that their prosecution or defense entails proof or denial of essentially the same facts, then the fees are deemed to be "interwined to the point of being inseparable," and the party seeking attorney's fees may recover the entire amount of fees covering all claims. *See Sterling,* 822 S.W.2d at 11–12; *Goebel,* 76 S.W.3d at 657–58; *Gill Sav. Ass'n,* 783 S.W.2d at 680. Though there may be testimony that a party's attorney tried to segregate the fees and could not do so, this is not required under the current legal standard. In articulating the legal standard for the "inextricably intertwined" exception, the *Sterling* court cited two cases that did not require a showing of failed attempts to segregate or actual inability to segregate. *See Gill Sav. Ass'n,* 783 S.W.2d at 680; *Flint & Assoc.,* 739 S.W.2d at 624–25. The language used and cases cited by the *Sterling* court compel the conclusion that such a showing is not required to prevail under the "inextricably intertwined" exception.[10]

9. Indeed, after determining that a party had not shown that fees were inextricably intertwined, the Dallas Court of Appeals has gone so far as to state that this determination would not bind the trial court on remand and that the trial court was free to revisit the applicability of the "inextricably intertwined" exception. *See Geodyne Energy Income Production P'ship I-E,* 97 S.W.3d at 789–90. This court has held to the contrary regarding the binding nature of an appellate court's determination of the "inextricably intertwined" exception. *See Willis,* 118 S.W.3d at 47–48 (holding that "inextricably intertwined" exception did not apply, that trial court erred by not requiring segregation, and that case should be remanded to trial court for determination of the amount of the segregated attorney's fees).

10. We note, however, that a legal rule that accommodated some of the concerns addressed by Britannia's proposed legal standard would further the rationale underlying the general rule requiring segregation and also promote fairness and efficiency. For example, even if Britannia's claims arose out of the same transaction and their prosecution or defense entailed proof or denial of essentially the same facts, it is not clear why Air Routing should be able to recover fees for work related solely to legal research and motions for summary judgment based on legal elements not included in the Theft Act claim, such as Air Routing's research, drafting, and presentation of a motion for summary judgment asserting no evidence of reliance. If the factual allegations are essentially similar, it makes sense that the fees for legal work regarding the facts need not be segregated, but

■ This conclusion is further confirmed by the *Aiello* case, in which the Texas Supreme Court decided that attorney's fees concerning issues that already had been decided by an agreed judgment could be recovered because they were "integrally related" to claims based on the failure to perform the agreed judgment, even though the claimant's counsel was able to segregate the fees for these issues from the other fees. *See Stewart Title Guar. Co. v. Aiello*, 941 S.W.2d 68, 73 (Tex.1997). The *Aiello* case confirms that segregation focuses on the similarity and connection between the factual issues rather than on whether counsel are capable of segregating the work and corresponding fees. *See id.* In sum, we reject as contrary to controlling precedent Britannia's second alternative argument regarding the "inextricably intertwined" legal standard.[11] *See Sterling*, 822 S.W.2d at 11–12; *Aiello*, 941 S.W.2d at 74; *Goebel*, 76.W.3d at 657–58; *Gill Sav. Ass'n*, 783 S.W.2d at 680. The trial court erred to the extent it based its ruling on this standard for determining the "inextricably interwined" exception.[12] Rather, to determine this issue, Air Routing must show: (1) the attorney's fees incurred are in connection with claims arising out of the same transaction, and (2) the claims are so interrelated that their prosecution or defense entails proof or denial of essentially the same facts. *See Sterling*, 822 S.W.2d at 11–12 (stating this standard, then restating this standard and indicating that, if this standard is satisfied, the fees are deemed to be "interwined to the point of being inseparable," and the party seeking fees may recover the entire amount of fees covering all claims); *Young v. Neatherlin*, 102 S.W.3d 415, 420 (Tex.App.-Houston [14th Dist.] 2003, no pet.); *Flint & Assocs.*, 739 S.W.2d at 624–25.

**2. As to Air Routing's defense of Britannia's claims, did these claims arise out of the same transaction and were they so interrelated that their prosecution or defense entailed proof or denial of essentially the same facts?**

We must now determine whether Britannia's claims against Air Routing arose out of the same transaction and were so interrelated that their prosecution or defense entailed proof of essentially the same facts. At the bench trial on the attorney's fees issues, Air Routing introduced into evidence 565 pages of redacted billing records from Air Routing's attorneys.[13] Air

---

° it is not clear why partial segregation should not still be required as to fees relating to legal issues not part of the Theft Act claim. However, the Texas Supreme Court has adopted a different legal standard, which we are bound to follow. *See Sterling*, 822 S.W.2d at 11–12; *Stewart Title Guar. Co. v. Aiello*, 941 S.W.2d 68, 72 (Tex.1997); *Goebel*, 76 S.W.3d at 657–58.

**11.** Britannia also relies on *Amerada Hess Corp. v. Wood Group Prod. Tech.*, 30 S.W.3d 5, 14 (Tex.App.-Houston [14th Dist.] 2000, pet. denied). This court's ruling in that case appears to have been based on a determination that the claims against Hess and against Graham were not so interrelated that their prosecution or defense entailed proof or denial of essentially the same facts. *See id.* In any event, to the extent the case stands for the proposition that parties in Air Routing's position must prove that the attorney's fees for the claims simply cannot be separated despite attempts to do so, then, to this extent, it imposes a requirement not prescribed by controlling precedent. *See id.; Sterling*, 822 S.W.2d at 11–12; *Aiello*, 941 S.W.2d at 74; *Goebel*, 76 S.W.3d at 657–58; *Gill Sav. Ass'n*, 783 S.W.2d at 680.

**12.** *See* Findings of Fact 9–13, Conclusions of Law 3–7.

**13.** On appeal, Britannia complains that these records are heavily redacted. Britannia; however, did not object to the admission of these records in the trial court, and notwithstanding the redactions, under the applicable legal standard, the record in this case is sufficient for a court to rule regarding the "inextricably intertwined" exception.

Routing also presented the billing attorney for Air Routing (Broughton), who testified in pertinent part as follows:

● On several occasions, Broughton personally reviewed the 565 pages of Haynes & Boone billing records introduced into evidence. As the billing partner, he reviewed these documents as the invoices were generated. He reviewed them again when they were produced in discovery and a third time in preparation for his testimony at the attorney's fees trial.

● In defending against claims in this lawsuit through September 12, 2001, Air Routing incurred a total amount of $1,909,753.70 in attorney's fees and related expenses. Based on Broughton's review of the time entries, Air Routing was asking the trial court to award $1,177,028.30 in fees relating to the defense against the Theft Act claim.

● In Britannia's petitions, the alleged facts supporting Britannia's Theft Act claim were the same as the facts alleged in support of Britannia's other claims.

● The work that Britannia claims relates to Air Routing's contributory negligence also related to Air Routing's defense of the Theft Act claim.

● Given the length of time that passed before Britannia attempted to dispute the Jet Card charges in question, Air Routing needed to determine if someone "on the inside" at Britannia had participated in or allowed the overbilling to occur and this related to Air Routing's defense against the claim that it had entered into a conspiracy to commit theft against Britannia.

● In his calculation of fees relating to the Theft Act claim, Broughton did not include (1) fees relating to Air Routing's unsuccessful counterclaim for declaratory judgment, (2) fees relating to defendants that were dismissed from the case before trial, and (3) work on alter-ego issues that Air Routing believed might be raised by Britannia.

● The hourly rates charged by Air Routing's counsel were reasonable rates in Houston, Texas, for a complex case such as this one, and the attorney's fees sought by Air Routing pertaining to the Theft Act factual allegations were reasonable and necessary.

● If Britannia had not pleaded the Theft Act claim, Broughton would not have changed the defense of the case because the allegations regarding the Theft Act claim were inextricably interwoven with the allegations regarding the fraud, negligent-misrepresentation, and conspiracy claims.

● Air Routing would have had to conduct the same discovery in this case even if Britannia had asserted only the Theft Act claim.

● Air Routing incurred less than $100,000 in attorney's fees regarding the declaratory judgment counterclaim.

Although Britannia cross-examined Broughton, it did not offer any evidence at the trial regarding attorney's fees.

■ Our review of the relevant language from Britannia's Second Amended Petition shows that Britannia's claims are all based on the same transaction and factual allegations:

● Imad Ghalayini ("Ghalayini") was Air Routing's agent, and he convinced Britannia to use the Jet Card to make payments to NVA for services in Egypt.

● During this same time period, Ghalayini's company, Management International Corporation ("MIC"), began a

factoring arrangement with NVA. Under this arrangement, NVA would transfer to MIC invoices for services provided to Britannia, and MIC would make a discounted cash payment to NVA in exchange for the invoices. To activate payment to itself under the credit card system, MIC submitted to Air Routing summary billing information presumably based on the invoice data provided by NVA.

- Without questioning the minimal billing information submitted by MIC, Air Routing created detailed invoices that were electronically submitted to the Royal Bank. Based on the detailed invoices from Air Routing, the Royal Bank then forwarded payment to MIC and sent its own invoice to Britannia.

- As part of its efforts to promote the credit card program, Air Routing represented to Britannia that it would validate and verify invoices submitted by vendors like NVA.

- Britannia regarded this validation and verification service as an integral part of what it was receiving as a Jet Card subscriber. However, from February 1997 through December 1998, Air Routing accepted summary billing information which did not contain details sufficient to carry out a validation and verification of the charges as promised. Air Routing deliberately failed to create or follow a validation and verification system to detect duplicate or fraudulent charges from vendors. Air Routing created detailed invoices which they forwarded to the Royal Bank without requiring their agents to submit any documentation to support the billings.

- In late 1998, Britannia learned that much of the billing information supplied by Air Routing to the Royal Bank relating to services supposedly provided by NVA to Britannia was invalid. Because of false and incorrect billing information submitted by MIC through Air Routing, Britannia paid over $8 million in excess charges from February 1997 to December 1998. These fraudulent charges were maliciously and intentionally submitted by Air Routing and Ghalayini for the purpose of defrauding Britannia.

- Because Ghalayini was Air Routing's agent, Air Routing is legally liable for Ghalayini's actions in submitting fraudulent invoices through MIC.

Relying on these factual allegations, Britannia alleged fraud and negligent-misrepresentation claims based on (1) Air Routing's alleged representations to Britannia that it would validate and verify billing information submitted by NVA and (2) Air Routing's alleged malicious and intentional forwarding of false billing information to the Royal Bank. Britannia asserted that it relied on Air Routing's alleged misrepresentations to its detriment in paying for services that it had never received from NVA.

Relying on these same factual allegations, Britannia alleged that Air Routing and Ghalayini entered into a civil conspiracy to defraud Britannia by submitting fictitious or duplicative invoices for services that had not been performed by NVA and thus causing Britannia to pay substantial amounts that were not owed. Again relying on these same factual allegations, Britannia alleged that (1) Air Routing also entered into an agreement to steal substantial amounts of money from Britannia, (2) to this end and in violation of the Theft Act, Air Routing deceived Britannia into paying invoices for services that had never been performed by NVA. All of Britannia's claims involve allegations that Air Routing deceived Britannia into paying for services that NVA never performed. Britannia

sought the same damages for all of its claims—the more than $8 million that Britannia paid for services NVA did not perform.

Britannia's response to Air Routing's motion for summary judgment as to the Theft Act claim [14] also shows that Britannia's claims were based on the same transaction and essentially the same facts. In this response, Britannia characterized its Theft Act claim by making the following allegations:

- Air Routing intentionally and unlawfully appropriated funds from Britannia by propagating false invoices and overcharges.
- Theft may be proven by representations of a defendant that induce the plaintiff to pay money, if the defendant had an intent to deprive plaintiff of the money.
- Air Routing violated the Theft Act by accepting and allowing overcharges to be processed in direct opposition to Air Routing's representations that it would verify and validate invoices, including representations made in Air Routing's brochure.
- Air Routing violated the Theft Act because, having sole and exclusive control of the invoice summaries that exposed the overcharges, Air Routing frequently acted to override warnings from its own computing system exposing potential overcharges by the vendors. Such actions by Air Routing made it possible for Air Routing to appropriate Britannia's property. Air Routing actively participated in the series of invoicing actions that caused the unlawful appropriation of Britannia's property. Air Routing improperly obtained amounts of Britannia's money from the overcharges, as a result of commissions obtained on each transaction processed.

- Britannia has presented adequate evidence that Air Routing conspired with Ghalayini to defraud and/or steal from Britannia.
- Britannia has presented sufficient evidence to show that Air Routing participated in the invoice processing service that defrauded Britannia, resulting in a profit to Air Routing.
- Air Routing enabled the fraudulent invoicing actions of Ghalayini and MIC.

In responding to Air Routing's motion for summary judgment as to fraud and negligent misrepresentation, Britannia also relied on alleged misrepresentations in the same brochure:

As an integral and essential part of the Jet Card program, Air Routing **represented that it would validate and verify invoices submitted by vendors.** Air Routing assumed the responsibility of making sure their clients, including Britannia, were not improperly charged by suppliers. Air Routing's own promotional materials contain these representations. In promoting the system, Air Routing promised that it would validate charges to "correct inaccuracies that could otherwise go unnoticed." *See* IATA Global Charge Programme, attached as *Exhibit 3.* (emphasis added).[15]

14. Air Routing filed various motions for summary judgment, including a motion for summary judgment as to fraud and negligent misrepresentation, a motion for summary judgment as to the Theft Act claim, and a no-evidence motion for summary judgment attacking all of the essential elements of Britannia's claims.

15. We presume the trial court took judicial notice of the contents of its file in this case, which included these summary-judgment responses. *See Holley v. Holley*, 864 S.W.2d

Of the four exhibits attached to Britannia's response to Air Routing's motion for summary judgment as to the Theft Act claim, three were also attached to Britannia's response to Air Routing's motion for summary judgment as to the fraud and negligent-misrepresentation claims.[16] Thus, in its responses to Air Routing's motions for summary judgment, Britannia indicates that all of its claims are based on the same factual allegations—that Air Routing deceived Britannia into paying for services that NVA never performed.[17]

After reviewing the evidence presented at the bench trial as to the attorney's fees issues, the allegations in Britannia's petition, and Britannia's description of its claims in its responses to Air Routing's motions for summary judgment, we conclude that Britannia's claims against Air Routing arose out of the same transaction and were so interrelated that their prosecution or defense entailed proof of essentially the same facts. *See Hamrick,* 125 S.W.3d at 585–86; *Goebel,* 76 S.W.3d at 657–58; *Chilton Ins. Co. v. Pate & Pate Enterprises, Inc.,* 930 S.W.2d 877, 896 (Tex.App.-San Antonio 1996, writ denied); *Gill Sav. Ass'n,* 783 S.W.2d at 680.

■ Britannia asserts a number of arguments in support of its contention that its claims against Air Routing did not arise out of the same transaction and were not so interrelated that their prosecution or defense entailed proof of essentially the same facts. Britannia argues Air Routing spent a significant amount of time attempting to develop a contributory negligence defense even though this defense does not apply to any of Britannia's claims. Britannia also asserts that Air Routing did not show that the work regarding its alleged contributory negligence defense related to the Theft Act. Presuming, as asserted by Britannia, that contributory negligence, as a matter of law, was not a defense to any of Britannia's claims, then any facts relating to contributory negligence are not facts entailed in the prosecution or defense of Britannia's claims and are not relevant to the "inextricably intertwined" exception. Britannia's arguments in this regard relate to the issue of whether Air Routing's at-

703, 706 (Tex.App.-Houston [1st Dist.] 1993, writ denied) (stating "[t]he trial court may properly take into consideration the file that is before it . . . [w]e presume the trial court took judicial notice of its files").

16. The same brochure and deposition excerpts from Penny LaBree were attached to both responses, and excerpts from George McNish's deposition were attached to both responses, although one page of the McNish excerpts was different as between the two responses.

17. This position is also confirmed by Britannia's argument to the trial court during the hearing on Air Routing's motion for summary judgment as to the Theft Act claim. At that hearing, Britannia's counsel stated:

In a nutshell, our claim on the theft law is that they and/or their agents unlawfully appropriated our money with [sic] is theft under Texas law and entitles us to get the money back . . . there's clearly all kinds of circumstantial evidence here that they knew or at least should have known and their agents clearly knew that they were misappropriating our funds.

. . .

It's also clear that if the invoice [sic] were made up, they were made up by one of the defendant's agent [sic] which is further evidence that defendants are liable for the misappropriation or unlawful appropriation of Britannia's money and therefore are liable for theft.

The characterization of Britannia's Theft Act claim during argument in open court may be used by a court in determining Britannia's position in this case and the nature of its claims. *See Sedgwick v. Kirby Lumber Co.,* 130 Tex. 163, 107 S.W.2d 358, 359–60 (1937); *see also Holley,* 864 S.W.2d at 706 (stating "[t]he trial court may properly take into consideration . . . the proceedings that are conducted in its presence").

torney's fees are reasonable and necessary. *See* TEX. CIV. PRAC. & REM.CODE § 134.005(b). As previously discussed, the trial court has yet to determine this issue and is free to consider these arguments on remand in the context of its determination of the amount of reasonable and necessary fees that should be awarded.[18]

On appeal, Britannia states it did not sue Air Routing directly for Theft Act liability but only alleged a Theft Act violation as an unlawful, overt act in support of its conspiracy theory. This is not what Britannia's pleadings and assertions in the trial court reflect. Britannia did allege that Air Routing conspired to defraud Britannia into paying amounts it did not owe and that Air Routing conspired to steal money from Britannia. However, Britannia also pleaded that Air Routing accomplished its alleged plan to steal money from Britannia in violation of the Theft Act "by deceiving Britannia into paying for services never performed by NVA." This is an allegation of direct liability under the Theft Act, which would impose civil liability on Air Routing if, with the intent to deprive Britannia of its money, Air Routing committed theft by using deception to induce Britannia to consent to Air Routing's appropriation of Britannia's money. *See* TEX. CIV. PRAC. & REM CODE § 134.002 (defining "person" to include a corporation and defining "theft" to include various alternative definitions of theft from the Texas Penal Code); *id.*, § 134.003(a) (imposing civil liability); TEX. PEN.CODE. § 31.01(1) (defining "deception" as, among other things, "creating or confirming by words or conduct a false impression of law or fact that is likely to affect the judgment

of another in the transaction, and that the actor does not believe to be true"); *id.*, § 31.01(3) (defining "effective consent" to include "consent by a person legally authorized to act for the owner" but to exclude "[c]onsent ... induced by deception ..."); *id.*, § 31.03(a), (b) (stating that a person commits theft "if he unlawfully appropriates property with intent to deprive the owner of property" and that "[a]ppropriation of property is unlawful if ... it is without the owner's effective consent"). In its response to Air Routing's motion for summary judgment as to the Theft Act claim, Britannia stated that it was asserting a direct claim against Air Routing under the Theft Act.

In a similar vein, Britannia asserts that its Theft Act claim did not involve the same facts because it arose from Air Routing's alleged handling of stolen property while the fraud and negligent-misrepresentation claims arose from false statements in the bills. For example, Britannia argues that to prove its fraud claim Britannia had to show Air Routing knowingly lied and Britannia was damaged by its reliance on those lies, whereas Britannia could have proven theft simply by showing Air Routing knew it was a conduit for stolen property. Britannia is correct that it could have asserted a Theft Act claim based on Air Routing's alleged appropriation of Britannia's property, knowing the property was stolen by another and with the intent to deprive Britannia of the property. *See* TEX. CIV. PRAC. & REM CODE § 134.002(2) (defining "theft" to include the definition of theft under TEX. PEN.CODE § 31.03); TEX. PEN.CODE. § 31.03(a),(b).

---

18. Broughton testified that the discovery regarding contributory negligence also related to issues such as whether a Britannia employee might have stolen the money. Britannia asserts that even if Air Routing had been able to show that a Britannia employee was involved in the alleged theft, that fact would not have exonerated Air Routing from its alleged Theft Act liability. Again, this issue relates to the determination of the reasonableness and necessity of the fees, rather than whether the "inextricably intertwined" exception applies.

However, as reflected by Britannia's petition and summary-judgment responses, the record in this case shows that Britannia never asserted such a claim against Air Routing; rather, it alleged that Air Routing violated the Theft Act "by deceiving Britannia into paying for services never performed by NVA." Britannia did not assert that Air Routing was a conduit for property that it knew others had stolen from Britannia. We should not ignore what is, based on what might have been.

Finally, Britannia states that the true question is how much the attorney's fees would have been if the Theft Act claim had been the only claim asserted in this case. Britannia asserts Air Routing introduced no evidence in this regard. Although this may be a relevant consideration, under the applicable legal standard, this is not the ultimate question as to the "inextricably intertwined" exception. In any event, Broughton testified that Air Routing would have had to conduct the same discovery in this case even if Britannia had asserted only the Theft Act claim.

In sum, we find Britannia's arguments regarding the "inextricably intertwined" exception unpersuasive, and we hold that the trial court erred in determining that this exception does not apply to Britannia's claims. Britannia has not asserted that, if the trial court erred in this regard, the error was harmless. Because, as stated above, the trial court awarded no attorney's fees to Air Routing based on its determination of this issue, we hold that this error probably caused the rendition of an improper judgment. *See* TEX.R.APP. P. 44.1(a). Similarly, the trial court awarded zero dollars in appellate attorney's fees because it stated that no appeal on the attorney's fees issue would be necessary if Air Routing had further segregated its fees as requested by the court. Because we have ruled in Air Routing's favor on the segregation issue, we hold that the trial court also reversibly erred in awarding zero dollars in appellate fees.

## V. CONCLUSION

The law regarding the "inextricably intertwined" exception to the general segregation rule is complicated. As an intermediate court of appeals, we apply the law in this area as promulgated by the Texas Supreme Court. Based on our de novo review of the trial court's determination regarding the applicability of the "inextricably intertwined" exception, we conclude that Britannia's claims against Air Routing arose out of the same transaction and were so interrelated that their prosecution or defense entailed proof or denial of essentially the same facts. We hold that the trial court reversibly erred in denying Air Routing recovery of attorney's fees based on the court's erroneous ruling regarding the "inextricably intertwined" exception, and we sustain Air Routing's four issues on appeal. Accordingly, we sever and reverse the trial court's judgment regarding the amount of reasonable and necessary trial and appellate attorney's fees to be awarded to Air Routing under the Theft Act. We remand this portion of the trial court's judgment for further proceedings in accordance with this opinion, and we affirm the remainder of the trial court's judgment. Though this court's ruling on the applicability of the "inextricably intertwined" exception will be binding on the trial court on remand, the issue of the amount of reasonable and necessary fees has not yet been determined, and our decision today does not limit the parties as to the arguments they may wish to make in this regard on remand.

EDELMAN, J., concurs without opinion.