Reversed and Remanded and Opinion filed November 30, 2004









Reversed and Remanded and Opinion
filed November 30, 2004.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-02-01187-CV

____________

 

JULIA L. KURTZ, Appellant

 

V.

 

RONALD D. KURTZ, Appellee

____________________________________________________

 

On Appeal from the 246th District Court

Harris County, Texas

Trial Court Cause No. 95-00738

____________________________________________________

 

O P I N I
O N








In this appeal we are asked to
determine whether the trial court erred when it refused to award attorney=s fees
and costs to appellant Julia L. Kurtz (AJulia@)
pursuant to an agreed divorce decree providing, in part, for the payment of
attorney=s fees
and costs in Aa subsequent suit to modify child
support.@  We also determine whether Julia=s child
support modification claims are so inextricably intertwined with her financial
claims asserted against appellee Ronald D. Kurtz (ARonald@) and her
defense of his counterclaims that segregation of her attorney=s fees is
not required.  Because we conclude the
provision in the agreed divorce decree unambiguously requires Ronald to pay
reasonable and necessary attorney=s fees
and costs in a subsequent action to modify child support, we hold the trial
court erred in refusing to award any fees under the provision.  We further hold Julia is not required to
segregate attorney=s fees
and costs relating to her modification of child support claim from those
expended in defense of Ronald=s
counterclaims pertaining to the child support award and offsets for direct
payments to Julia.  However, we hold
segregation is required for attorney=s fees
and costs incurred in connection with Julia=s
remaining financial claims against Ronald and her defense of his other
counterclaims.  Accordingly, we reverse
and remand for a determination of Julia=s
attorney=s fees
and costs. 

I.  Factual
and Procedural Background

Julia and Ronald Kurtz were
divorced on October 6, 1995.  In their
agreed divorce decree (the ADecree@), Ronald
was ordered to pay $200 per month for the support of their two minor daughters.[1]  As part of the division of the parties= estate,
the Decree provided for the payment of attorney=s fees
and costs as follows (Aattorney=s fees
provision@):

Further, RONALD D. KURTZ
IS ORDERED to pay the attorney=s fees and costs incurred by JULIA L. KURTZ in a
subsequent motion to modify child support. 
The attorney for JULIA L. KURTZ will provide to RONALD D. KURTZ on or
before the Order Modifying Prior Order is executed by the Court a statement of
the fees and costs incurred and IT IS ORDERED that RONALD D. KURTZ will pay
said fees and costs within thirty (30) days from his receipt thereof.

Neither party appealed from the Decree.  








More than six years after the
divorce, Julia filed a APetition
to Modify Parent-Child Relationship and for Judgment.@  In her petition, Julia sought an increase in
Ronald=s monthly
child support obligation, enforcement of previous judgments, and a cumulative
judgment for various unpaid debts, including credit card debts, income tax liabilities,
and medical expenses.[2]  Ronald filed an answer and subsequently, a
counter-petition seeking, among other things, joint managing conservatorship,
modified visitation rights, a restriction on the children=s
residence, a decrease in child support, and offsets for payments made directly
to Julia.  Julia answered the
counterclaim and amended her petition. 
In her second amended petition, Julia requested child support in excess
of the presumptive statutory guidelines.[3]  She also acknowledged that Ronald voluntarily
increased his child support payments when he became employed in 1998, and he
had been paying $1,350 per month since January 1, 2001, when his income
exceeded $6,000 per month.[4]


After a bench trial, the court
rendered judgment in favor of Julia on all issues except recovery of the
majority of her attorney=s fees
and costs.  Although the trial court did
award Julia $6,000 in attorney=s fees
for time expended to reduce to judgment various debts Ronald owed under the
Decree,[5]
it denied Julia=s request
for attorney=s fees related to her action to
modify Ronald=s child support obligation.  The trial court also entered numerous
findings of fact and conclusions of law. 









In its findings and conclusions, the trial court determined
the attorney=s fees provision impliedly provided
for payment of Areasonable and necessary@ attorney=s fees and costs.  The court found that, to the extent the
phrase Aattorney=s fees and costs incurred@ could be construed to mean anything
other than Areasonable and necessary@ attorney=s fees and costs, it was ambiguous.  The court also found that the attorney=s fees provision is rendered
unconscionable and unenforceable when interpreted in a manner allowing for the
recovery of attorney=s fees and costs not reasonable and necessary to a suit for
modification of child support.  As a
basis for denying Julia=s requested fees, the trial court reasoned that, because
Ronald had been paying child support in accordance with the statutory
guidelines, none of Julia=s attorney=s fees relating to the modification of child support were
reasonable or necessary.  Moreover, as a
separate basis for denying attorney=s fees under the provision, the trial
court found that Julia=s request for an award of child support in excess of the
statutory guidelines constituted an unreasonable and excessive demand.

II.  Issues
Presented

In twelve issues, Julia contends
the trial court erred in refusing to award attorney=s fees
and costs under the attorney=s fees
provision because the Decree unambiguously provides she is entitled to recover
those fees and costs without regard to whether they are reasonable or
necessary.  Moreover, Julia maintains she
is entitled to all of the attorney=s fees
and costs she incurredCover
forty thousand dollarsCbecause
the child support claims are inextricably intertwined with her other financial
claims and with Ronald=s
counterclaims and thus, fall within the exception to the segregation
requirement.  Julia also challenges the
trial court=s conclusions of law and the
legal and factual sufficiency of the evidence supporting many of the trial
court=s
findings of fact. 

We address only those issues
necessary to resolve this appeal in the following order: (A) interpretation and
application of the Decree=s
attorney=s fees
provision; (B) unreasonable and excessive demand; and (C) segregation of
attorney=s fees.








III.  Analysis

A.  Interpretation
and Application of the Decree=s
Attorney=s Fees Provision

1.         Does the Attorney=s Fees Provision
Unambiguously Provide for Payment of AAttorney=s Fees and Costs@ Without Regard to the
Reasonableness and Necessity of the Fees?

 

On appeal, Julia contends the
attorney=s fees
provision unambiguously requires that Ronald pay her attorney=s fees
and costs without any requirement that the fees be reasonable or
necessary.  Ronald argues the phrase Aattorney=s fees@ can only
be read to unambiguously mean Areasonable
and necessary attorney=s fees@ and,
alternatively, if the phrase is ambiguous, then the trial court properly
resolved the fact issue of the parties= intent.

The attorney=s fees
provision orders Ronald to pay Aattorney=s fees
and costs incurred@ by Julia
Ain a
subsequent motion to modify child support.@  Thus, we agree the trial court erred in
refusing to award Julia any of the attorney=s fees
she incurred in the prosecution of her action to modify child support.  However, we cannot agree she is entitled to
recover those fees and costs without regard to their reasonableness or
necessity. 

In paragraphs nine and ten of its
findings of fact and conclusions of law, the trial court concluded that Aattorney=s fees@ in the
provision means Areasonable
and necessary attorney=s fees,@ stating:

9.         The attorney fees expended by [Julia]
to modify child support were not reasonable and necessary.  Any contrary conclusion would suggest that,
when a party is ordered, or agrees, to pay attorney fees in Aa subsequent action to
modify child support,@ this creates a blank
check in which the opposing party could recover unreasonable, unnecessary fees
in any amount.  This Court rejects this
argument as legally and factually untenable.








10.       The Decree Attorney Fee Provision is
ambiguous to the extent that the phrase Aattorney=s fees and costs incurred@ could be construed to
mean anything other than Areasonable and necessary attorney=s fees and costs incurred.@  To the extent the Decree Attorney Fee
Provision is a contract, the parties intended it to cover only reasonable
and necessary attorney=s fees and costs incurred by Petitioner in a
motion to modify child support. 
To the extent the Decree Attorney Fee Provision is an order of this
Court, the Court intended and determines it to cover only reasonable and
necessary attorney=s fees and costs incurred
by Petitioner in a motion to modify child support. 

Thus, the trial court concluded that reasonableness
is an implied term of the attorney=s fees
provision.  

Because both Ronald and Julia
agreed to the Decree, its construction is governed by the law of
contracts.  See Allen v. Allen,
717 S.W.2d 311, 313 (Tex. 1986); see also Gulf Ins. Co. v. Burns Motors, Inc.,
22 S.W.3d 417, 422 (Tex. 2000) (AAn agreed
judgment should be construed in the same manner as a contract.@).  Whether a contract is ambiguous is a question
of law.  Heritage Res., Inc. v.
NationsBank, 939 S.W.2d 118, 121 (Tex. 1996). 








Neither Julia nor Ronald have
provided any authority in support of their positions, and we have found no
Texas case directly on point.  However,
our research reveals that at least one Texas court has held that an agreement
to pay unspecified attorney=s fees
implies payment of a reasonable fee for the attorney=s services.  See Girard Fire & Marine Ins. Co. v.
Koenigsberg, 65 S.W.2d 783, 785 (Tex. Civ. App.CDallas
1933, no writ) (AWhere the
parties do not expressly agree as to the amount, the law raises a promise to
pay that which is reasonable.@)  Courts in other jurisdictions have also
determined that, as a matter of public policy, reasonableness is an implied
term in any contract for attorney=s
fees.  See, e.g., Crest
Plumbing & Heating Co. v. DiLoreto, 531 A.2d 177, 183 (Conn. App. Ct.
1987); Kaminsky v. Kaminsky, 29 S.W.3d 388, 390 (Mo. Ct. App. 2000);
Missouri ex rel. Chase Resorts, Inc. v. Campbell, 913 S.W.2d 832, 835 (Mo.
Ct. App. 1995).  We agree with this
reasoning.[6]

Julia=s
argumentCthat she
is not required to demonstrate the attorney=s fees
she seeks are reasonable and necessary because the attorney=s fees
provision does not expressly state so Cis
unpersuasive.  As the trial court
reasoned, such a conclusion would result in a Ablank
check@
permitting an opposing party to recover unreasonable, unnecessary fees in any
amount.  Moreover, the attorney=s fees
provision is not rendered ambiguous merely because it does not expressly state
that it is limited to Areasonable
and necessary@ attorney=s fees
and costs.[7]


Accordingly, we hold that
reasonableness is an implied term in the Decree=s
attorney=s fees
provision and construe the term Aattorney=s fees
and costs@ to unambiguously require that
Ronald pay only reasonable and necessary attorney=s fees
and costs. 








2.         Is the Attorney=s Fees
Provision Unconscionable?

In paragraphs thirteen and
fourteen of its findings and conclusions, the trial court determined that any
interpretation of the attorney=s fees
provision permitting the recovery of fees and costs not reasonable and
necessary to a modification of child support renders the agreement
unconscionable and unenforceable.  Any
other interpretation, the trial court explained, would permit Julia to recover
all of her attorney=s fees
even though only a portion of the fees incurred were expended on the action to
modify child support.

On appeal, Julia contends Ronald
waived the defense of unconscionability because he did not plead it.  Additionally, she argues the fees were in
fact reasonable and necessary; therefore, they cannot be unconscionable.  Because we have determined that the attorney=s fees
provision implies payment of reasonable and necessary attorney=s fees
and costs, we do not consider whether a contrary interpretation would be
unconscionable.

3.         Do Ronald=s Voluntary Child Support
Payments in an Amount Greater than Ordered in the Decree Render Julia=s Attorney=s Fees Unreasonable and
Unnecessary? 

Julia also contends the trial
court erred in determining that the entire amount of the attorney=s fees
and costs she requested under the attorney=s fees
provision were unreasonable and unnecessary because Ronald was voluntarily
paying child support in accordance with the statutory guidelines.[8]  We agree.








In paragraphs two, five, six, and
seven of its findings of fact and conclusions of law, the trial court
determined the following: (1) Ronald Avoluntarily
paid 22.5% of the first $6,000 of net resources to [Julia] as child support
since, and before, the Petition to Modify was filed@; (2) the
amount Ronald was voluntarily paying was the appropriate amount of support due;
(3) Julia was seeking support in excess of the statutory guidelines; (4) when
the Decree was executed in 1995, Ronald was unemployed and the Decree=s
attorney=s fees
provision was designed to Apermit
the formalization of the new child support amount@ once
Ronald became employed; and (5) because Ronald was already voluntarily paying Athe full
amount of child support due,@ Julia=s action
was unsuccessful and therefore she was not entitled to an award of attorney=s
fees.  

We conclude the trial court
correctly recognized Ronald=s
contractual obligation to pay Julia=s
attorney=s fees
and costs when a new child support order was Aformalized.@ However,
it erred in determining Julia was not entitled to any attorney=s fees
for bringing an action for that very purpose because Ronald had been
voluntarily paying child support in accordance with the statutory
guidelines.  

As an initial matter, nothing in
the Decree provides that Ronald=s
obligation to pay attorney=s fees
and costs in a subsequent motion to modify child support is extinguished upon
his voluntary payment of additional child support.  Nor is there any requirement that Julia be successful in her
suit to modify the child support.  Hence,
the trial court erred in concluding Julia was not entitled to any attorney=s fees because Ronald had been
voluntarily paying additional child support and Julia=s action was therefore Aunsuccessful.@[9]








Additionally, under the circumstances,
Julia was entitled to pursue child support in excess of the presumptive
guidelines.  Although Ronald had been
paying additional child support, his monthly earnings exceeded $6,000 per month
and therefore, the trial court could have increased his support obligation
above the statutory guidelines if a variance was in fact in the children=s best
interest.  See Tex. Fam. Code Ann. '' 154.123,
154.126 (Vernon 2002).  Although the
guideline amounts are presumed to be reasonable, Ronald=s
voluntary payment of that amount does not necessarily mean he was paying an
amount of child support consistent with the best interests of the children.  See id. '
154.122(a); Clark v. Jamison, 874 S.W.2d 312, 316B17 (Tex.
App.CHouston
[14th Dist.] 1994, no writ).  Indeed, the
trial court could not have concluded Ronald was paying the Aappropriate
amount@ of child
support until after a hearing on that very issue.

Further, as a substantive matter,
the trial court erred in concluding a court order was not necessary because
voluntary payments were being made.  In
Texas, agreements concerning child support must be approved by the court.  Tex.
Fam. Code Ann. ' 154.124
(Vernon 2002); Williams v. Patton, 821 S.W.2d 141, 143B44 (Tex.
1991).  Thus, even if Julia and Ronald
had agreed to the amount of child support being paid, Julia would have no legal
recourse in the event Ronald ceased paying voluntarily.  Without an order, Julia would be unable to
obtain an arrearages judgment or a wage withholding order and enforcement by
contempt would not be available.  It was
therefore incumbent upon Julia to obtain a court order to ensure that the child
support obligation was legally enforceable.

In sum, we conclude Ronald=s
voluntary child support payments did not abrogate Julia=s
contractual right to attorney=s fees
and costs for bringing an action to modify child support, nor did it obviate
the need for a court order.  Accordingly,
the trial court erred in concluding that, because Ronald voluntarily paid
support in accordance with the statutory guidelines, Julia was not entitled to
any attorney=s fees and costs under the
Decree. 

B.  Unreasonable
and Excessive Demand

In paragraph fifteen of its
findings of fact and conclusions of law, the trial court stated as follows:








15.       As a separate and independent ground for
its judgment, the Court finds that [Julia=s] attempt to gain child
support of as much as $5,000 per month ([Julia=s] pre-trial demand) and
at least $2,500 per month ([Julia=s] demand at the close of
trial) constituted an unreasonable and excessive demand under Texas law . . .
.  In the instant case, [Julia=s] claim for
above-guideline support was a clearly Aexcessive demand,@ and [Julia] is entitled
to no attorney=s fees and costs under the
Decree Attorney Fee Provision.

On appeal, Julia contends that because Ronald
failed to plead the affirmative defense of unreasonable and excessive demand,
it was waived.  She also contends the
defense does not apply here; the attorney=s fees
provision does not require that a demand be made; no demand was made; and, if a
demand was made, it was not made unreasonably or in bad faith.   

A party must affirmatively assert
excessive demand as a defense to a claim for attorney=s
fees.  Standard Constructors, Inc. v.
Chevron Chem. Co., Inc., 101 S.W.3d 619, 627B28 (Tex.
App.CHouston
[1st Dist.] 2003, pet. denied) (citing Essex Crane Rental Corp. v. Striland
Constr. Co., 753 S.W.2d 751, 758 (Tex. App.CDallas
1988, writ denied)); Tuthill v. Southwestern Pub. Serv. Co., 614 S.W.2d
205, 212 (Tex. App.CAmarillo
1981, writ ref=d n.r.e.).  Here, Ronald did not plead excessive demand
as an affirmative defense and the record does not reflect the issue was tried
by consent; therefore, we hold it was waived.[10]  See Tex.
R. Civ. P. 94; Tacon Mech. Contractors, Inc. v. Grant Sheet Metal,
889 S.W.2d 666, 671 (Tex. App.CHouston
[14th Dist.] 1994, writ denied). 
Consequently, the trial court erred in determining that Julia=s claim
for child support in excess of the statutory guidelines constituted an excessive
demand.  

C.  Segregation
of Attorney=s Fees








Lastly, Julia contends she is entitled to all the attorney=s fees and costs expended in the
underlying suit, not just those expended on the modification of child support,
because the child support claims were inextricably intertwined with her other
financial claims and with Ronald=s counterclaims, and thus, were
inseparable as a matter of law.[11]  As we explain below, we agree in part and
disagree in part.

After the trial court entered
judgment that Julia was not entitled to any attorney=s fees
under the Decree=s
attorney=s fees
provision, Julia moved to modify, correct, or reform the judgment, arguing that
she was entitled to all of her attorney=s fees
because the claims were inextricably intertwined.  Ronald disputed her assertion, pointing out
that the testimony of Julia=s
attorneys indicated they were able to segregate time expended on the
modification action from time expended on other issues raised at trial.  In its findings of fact and conclusions of
law, the trial court rejected Julia=s Ainextricably
intertwined@ argument. 

In its findings, the trial court
acknowledged Julia=s
argument at trial that she was entitled to Aall of
her attorneys= fees expended in this matter,
whether or not related to the portion of the action in which she sought to
increase child support.@  However, the trial court found that the
attorney=s fees
provision Aapplies only to the portion of
the present action in which [Julia] sought to modify child support, not to her
other financial claims or her defense against [Ronald=s]
counter-petition.@  

By its express language, the
attorney=s fees
provision is limited to attorney=s fees
and costs incurred in Aa
subsequent motion to modify child support.@  Thus, the trial court was correct in
determining that the provision entitled Julia to attorney=s fees
and costs only on a suit to modify child support.  Accordingly,
we examine whether Julia=s child
support modification claim is inextricably intertwined with her other financial
claims and her defense of Ronald=s various
counterclaims.








When a plaintiff seeks to recover attorney=s fees in a case involving multiple
claims, at least one of which supports an award of fees and at least one of
which does not, the plaintiff must offer evidence segregating attorney=s fees among the various claims.  See Stewart Title Guar. Co. v. Sterling,
822 S.W.2d 1, 10B11 (Tex. 1991).  An
exception to this duty to segregate arises when the services rendered are in
connection with claims arising out of the same facts or transaction and their
prosecution or defense entails proof or denial of essentially the same
facts.  Id. at 11.[12]  Under those circumstances, the party suing
for attorney=s fees may recover the entire amount
for all claims that satisfy this exception.  Sterling, 822 S.W.2d at 12. 

To determine whether claims are
inextricably intertwined, a court must examine the facts alleged in support of
the claims.  See id. at 11B12.  Even if the claims arise out of the same
transaction, if the prosecution or defense does not entail proof or denial of
essentially the same facts, the exception does not apply.  See Air Routing Int=l Corp.
(Canada) v. Britannia Airways, Ltd., ___ S.W.3d ___, No.
14-02-01167-CV, 2004 WL 1925963, at *3 (Tex. App.CHouston
[14th Dist.] Aug. 31, 2004, no pet. h.).  We review the trial court=s
determination of this issue de novo.  See
id; see also Houston Livestock Show & Rodeo, Inc. v. Hamrick,
125 S.W.3d 555, 585 (Tex. App.CAustin
2000, no pet.) (stating, A[w]hether
fees can be segregated between various claims and parties is a question for the
court@ and
using language appropriate to a de novo review).[13]









Here, in
addition to an increase in Ronald=s child support obligation, Julia
asserted other financial claims, seeking enforcement of previous judgments,
including a judgment on various debts and obligations Ronald owed but failed to
pay, such as credit card debts, income tax liabilities, and unpaid medical
expenses.  Julia also requested wage withholding
orders for payment of additional judgments awarded in the Decree.  Ronald=s counterclaims included: (1) a
decrease in his child support obligation, (2) offsets for direct payments made
to Julia Ain the form of child support or
otherwise,@ (3) a change in
conservatorship, (4) a modification of the parties= relative
rights and duties, (5) a change in the terms of possession and access, (6) a
restriction on the children=s
passports, and (7) a restriction on the children=s county
of residence.  

To support the assertion that her claims were
inextricably intertwined, Julia contends some of the same factors the trial
court could consider when determining an appropriate amount of child support
are at issue in all her claims.  In
particular, Julia points to several factors, listed in section 154.123(b) of
the Family Code, that the trial court may consider in determining whether to
deviate from the child support guidelines.[14]  Specifically, Julia relies on the following
factors:








$                  
debts or debt service Julia assumed;

$                  
the ability of the parents to contribute to the support of the child;
and

$                  
any other reason consistent with the best interest of the children,
taking into consideration the circumstances of the parents.

 

Consequently,
Julia reasons that all of the proof in the case was Aessential@ to the
modification of child support action. 
Julia also argues that, like the child support action, resolution of
Ronald=s
counterclaims regarding the children required the court to determine whether a
modification was in the best interests of the children and whether the
circumstances of the children or the parties had materially and substantially
changed.  See Tex. Fam. Code Ann. ' 156.101
(Vernon 2002) (establishing grounds for modification of conservatorship,
possession, and access).  

We conclude Julia was not required to segregate
attorney=s fees
and costs incurred in pursuing her action to modify child support from those
incurred in defending Ronald=s
counterclaims challenging the amount of child support and his claims for
offsets on payments made directly to Julia. 
Those counterclaims directly challenged Julia=s action
to increase Ronald=s child
support obligation, and she had to defeat the counterclaims to prevail on her
motion to modify child support.  See,
e.g., Willis v. Donnelly, 118 S.W.3d 10, 46B47 (Tex.
App.CHouston
[14th Dist.] 2003, pet. filed) (holding successful party in action to recover
balance due on promissory note was also entitled to attorney=s fees
incurred in defeating affirmative defenses to action and usury counterclaim); Coleman
v. Rotana, Inc., 778 S.W.2d 867, 873B74 (Tex.
App.CDallas
1989, writ denied) (concluding fees incurred in defense of counterclaim are
recoverable when facts necessary for plaintiff to recover on its claim also
serve to defeat the counterclaim); Schepps Grocery Co. v. Burroughs Corp.,
635 S.W.2d 606, 611 (Tex. App.CHouston
[14th Dist.] 1982, no writ) (AA party
may properly recover for legal services in prosecuting its claim although the
same services also relate to defending a counterclaim@).  Therefore, Julia is entitled to attorney=s fees
and costs for defending against Ronald=s
counterclaims pertaining to the child support obligation and his requested
offsets for direct payments. 








We cannot say, however, that the factual basis
necessary to support Julia=s child
support modification claims are so inextricably intertwined with her defense
against Ronald=s counterclaims relating to
conservatorship, possession, and access and her other financial claims, as to
fall within the exception to the segregation requirement.  First, Julia does not offer an explanation of
how her other financial claimsCwhich
include claims for various credit card debts and income tax liabilitiesCmirror
her child support claims.  Although Julia=s
assumption of certain debts Ronald failed to pay is a factor the trial court
may consider when determining whether to deviate from the child support
guidelines, this is not enough to establish that the claims were inextricably
intertwined.  

Likewise, although the factors the trial court may
consider when deciding whether to deviate from the statutory guidelines may
overlap to some extent with the factors it can consider in determining the
issues raised in Ronald=s
conservatorship, possession, and access counterclaims, overlapping factors or elements
is not the standard.  Julia fails to cite
facts that are the bases of both her child support modification claims and her
defense of Ronald=s
counterclaims. Indeed, Julia=s counsel
conceded at oral argument that she presented no testimony at trial to support
her contention the claims were inextricably intertwined.  








Finally, at trial, Julia=s
attorneys conceded their ability to segregate the percentage of fees expended
on the child support action.  One of
Julia=s
attorneys, Thomas Conner, estimated that about one-third of his fees were
expended on child support modification: AI would
probably put it B if I was
going to try to make a real good estimation, 30 percent on modification of
support, 30 percent on modification of the other children issues, and 30 percent
on the balance of everything else.  A
third, a third, a third.@  Another of Julia=s
attorneys, Gary
Langford, testified on direct examination that about half of his fees were
expended on child support modification.[15]  Thus, Julia=s
attorneys were able to segregate the attorney=s fees
and costs associated with the parties= various
claims and counterclaims.

In sum, we conclude that Julia=s defense
of Ronald=s counterclaims to decrease child
support and his claim for offsets for payments made directly to Julia, are
inextricably intertwined with Julia=s child
support modification claims.  Those
claims arise out of the same transaction and are so interrelated that their
prosecution or defense entails proof or denial of essentially the same
facts.  See Air Routing Int=l Corp. (Canada),
2004 WL 1925963, at *9B14.  However, Julia has failed to establish that
her other financial claims against Ronald and her defense of his counterclaims
relating to conservatorship, possession, and access are inextricably
intertwined with her child support modification claims.  See Young v. Neatherlin, 102 S.W.3d
415, 420 (Tex. App.CHouston
[14th Dist.] 2003, no pet.) (holding claims were not inextricably intertwined
because evidence in record did not suggest that claims were so interrelated that
their prosecution or defense entailed proof of essentially the same
facts).  Therefore, under the Decree=s
attorney=s fees
provision, Julia is entitled to reasonable and necessary attorney=s fees
and costs incurred in her action to modify child support, and fees and costs
incurred in her defense of Ronald=s
counterclaims to decrease child support and for credit on payments made
directly to Julia.  However, Julia is not
entitled to attorney=s fees
and costs incurred in connection with her other financial claims and her
defense of Ronald=s
counterclaims relating to conservatorship, possession, and access.  We therefore remand to the trial court for a
determination of Julia=s
attorney=s fees
and costs. See Sterling, 822 S.W.2d at 12.[16]








Accordingly, we reverse the judgment of the trial
court and remand this cause for further proceedings in accordance with this
opinion.

 

/s/        Eva M. Guzman

Justice

 

Judgment
rendered and Opinion filed November 30, 2004.

Panel
consists of Justices Edelman, Seymore, and Guzman.

 

 











[1]  Ronald and
Julia were both lawyers at the time the Decree was entered; however, Ronald was
unemployed.   





[2]  Julia=s claims, other than her child support modification
claims, will be collectively referred to throughout this opinion as her Aother financial claims.@





[3]  The Family
Code establishes guidelines for child support which are presumed to be
reasonable and in the children=s best interests. 
Tex. Fam. Code Ann. ' 154.122 (Vernon 2002).  The court may order support above or below
the guideline amount if the evidence rebuts the presumption that application of
the guidelines is in the best interest of the children and justifies a variance
from the guidelines.  Id. ' 154.123(a). 
The guidelines are specifically designed to apply to situations in which
the obligor=s monthly net resources are $6,000 or less.  Id. '
154.125.  If the obligor=s net resources exceed $6,000 per month, the court
shall apply the percentage guidelines to the first $6,000.  Id.
' 154.126.  The
court may order additional amounts of child support as appropriate, depending
on the income of the parties and the proven needs of the children.  Id.





[4]  Specifically,
Julia stated in her petition that (1) starting July 1, 1998, Ronald began
paying $940 per month due to his becoming employed; (2) on October 15, 1998, he
began paying $1,010 per month due to an increase in pay; (3) on January 15,
1999, he began paying $1,110 per month due to an increase in pay; and (4) on
January 1, 2001, he began paying $1,350 per month as his net income was over
$6,000.





[5]  Ronald does not appeal the $6,000
award.





[6]  Our conclusion that a contract for
attorney=s fees impliedly means a contract
for reasonable attorney=s fees is likewise consistent with
the Texas Disciplinary Rules of Professional Conduct.  Disciplinary Rule 104, governing a lawyer=s fee arrangements with his
clients, provides that A[a] lawyer shall not enter into an
arrangement for, charge, or collect an illegal fee or unconscionable fee.@ 
See Tex. Disciplinary R.
Prof=l Conduct 1.04(a), reprinted in Tex. Gov=t Code
Ann., tit. 2, subtit.
G app. A (Vernon Supp. 1998).  The rule
explains that a fee is unconscionable Aif a competent lawyer could not form a reasonable belief
that the fee is reasonable.@  Id.  Every lawyer is bound by the rule and
consequently, any fees charged or collected must be reasonable.  Cf. Arthur Andersen & Co. v. Perry
Equip. Corp., 945 S.W.2d 812, 818 (Tex. 1997) (holding an award of attorney=s fees under DTPA must be
reasonable based upon Disciplinary Rule 1.04). 





[7]  Although Julia contends she was not
required to prove the reasonableness of her attorney=s fees, she did present evidence
that the fees were reasonable.  Ronald
did not challenge the amount of the fees;
as he explained during cross-examination by Julia=s
attorney:

 

Your Honor B Mr.
Conner, I=ll cut to the chase for you.  My complaint about the legal fees is that
they weren=t necessary at all after the settlement offer or that
they=re not legally B that
your client isn=t legally entitled to them.  I had no complaint about the amount of your
bills or Mr. Langford or Ms. Taylor.  And
the point you were making about mine B and as
an attorney I can say I think I was pretty impressed that you could try this
case for the amount that you billed her.

 

Instead, Ronald challenged the entirety
of the fees and costs Julia sought as unnecessaryCand therefore unreasonableCbecause he was voluntarily paying
the guidelines amount of child support.  We address this argument below.





[8]  Paragraph
twelve of the trial court=s findings of fact and conclusions of law provides as
follows: AGiven that [Ronald] was already paying timely and
voluntarily the exact child support amount awarded by the Court after trial,
none of the attorneys= fees and costs incurred by [Julia] in her motion to
modify were reasonable and necessary.@ 





[9]  In any event,
Julia was successful because the trial court=s order
increased the amount of child support Ronald was required to pay from $200 per
month to $1,350 per month. 





[10]  Because Ronald waived this
affirmative defense, we find it unnecessary to decide whether the doctrine of
unreasonable or excessive demand is applicable to a suit for modification of
child support. 





[11]  In total,
Julia=s attorney=s fees
amounted to $42,465.79.





[12]  This exception
is commonly referred to as the Ainextricably intertwined@
exception.  See Air Routing Int=l Corp. (Canada) v. Britannia
Airways, Ltd., ___ S.W.3d ___, No. 14-02-01167-CV, 2004 WL 1925963, at *1,
n.1 (Tex. App.CHouston [14th Dist.] Aug. 31, 2004,
no pet. h.).





[13]  In Stewart Title v. Sterling,
the Texas Supreme Court reversed the trial court=s implied segregation determination
and addressed the appropriate remedy when Aan appellate court determines that segregation was
required.@ 
Stewart Title Guar. Co. v.
Sterling, 822 S.W.2d 1, 11 (Tex.
1991).  Rather than remanding to the court of appeals
to conduct an analysis of the sufficiency of the evidence to support the trial
court=s segregation determination, the Sterling
court held that A[f]ollowing a review of the record,
we conclude that the attorney=s fees are capable of segregation.@  Id. at 12. 
Accordingly, we conduct a de novo review of the trial court=s segregation determination.  





[14]  In determining
whether application of the guidelines would be unjust or inappropriate under
the circumstances, the court must consider evidence of all relevant factors,
including: 

 

$          the
ages and needs of the children; 

$          the
ability of the parents to contribute to the support of the children; 

$          any
financial resources available for the support of the children; 

$          the
amount of time of possession of and access to the children; 

$          the
amount of the obligee=s net resources, including earning potential; 

$          child
care expenses necessary to enable either party to maintain gainful employment; 

$          whether
either party has the managing conservatorship or actual physical custody of
another child;

                        .
. . 

$          the
cost of travel in order to exercise possession of and access to the children; 

. . .

$          any
other reason consistent with the best interest of the children, taking into
consideration the circumstances of the parents. 

 

Tex. Fam. Code Ann. ' 154.123(b) (Vernon 2002). 





[15]  Mr. Langford
offered no testimony regarding the percentage of attorney=s fees billed by Jacqueline Taylor, another attorney
in his office, for the motion to modify child support.





[16]  Given our disposition of the
issues, it is not necessary that we address Julia=s remaining legal and factual
insufficiency challenges to the trial court=s findings of fact and conclusions of law.  However, we do briefly address Julia=s complaints regarding paragraph
seventeen, which provides as follows:

 

 

The parties intended the Decree
Attorney Fee Provision to apply to Aa@ motion to modify child support
upon [Ronald=s] becoming employed.  [Julia=s] motion to modify child support in the present action
exhausts this Decree Attorney Fee Provision, and [Ronald] bears no further
responsibility or liability under that Provision, whether construed as a
contract, an Order of this Court, or both.

Julia contends this is an advisory
opinion and is an improper legal conclusion, and further claims it is not
supported by legally or factually sufficient evidence.  We agree the issue was not ripe for
determination.