**AMERADA HESS CORPORATION,**
Appellant/Appellee,

v.

**WOOD GROUP PRODUCTION TECHNOLOGY, Appellee/Appellant.**

No. 14–98–00649–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Feb. 24, 2000.

Rehearing Overruled Nov. 9, 2000.

L. Keith Slade, Houston, for appellants.

Phillip B. Dye, Jr., Houston, for appellees.

Panel consists of Justices YATES, FOWLER and FROST.

## O P I N I O N

WANDA McKEE FOWLER, Justice.

This is an appeal brought by both parties to an indemnity suit. Amerada Hess Corporation appeals the trial court's judgment awarding it attorney's fees in a personal injury lawsuit brought by an employee of Wood Group Production Technology. Wood Group appeals from the trial court's award of indemnification to Hess for a $200,000 settlement payment made by Hess to the employee, and a portion of attorney's fees and expenses incurred by Hess in defending the personal injury suit. We affirm, in part, and reverse and remand, in part.

### FACTS AND PROCEDURAL POSTURE

Hess entered into two separate indemnity agreements pursuant to contracts for certain services. Under a Blanket Time Charter Agreement, Hess contracted with John E. Graham & Sons to provide transportation for Hess employees and employees of Hess contractors to and from various work sites. Under the Agreement, Hess promised to defend and indemnify Graham if necessary. Several years later, Hess entered a Master Service Contract with Wood Group to purchase equipment and certain logging and computer data interpretation services from Hess. Hess also agreed to provide Wood Group employees with transportation to various work sites. Both Hess and Wood Group agreed to reciprocal clauses, in which each pledged to indemnify the other and several groups of people, including contractors, if one of their employees brought a cause of action against the other for bodily or personal injury.

On April 27, 1994, despite inclement weather, Wood Group employee Burl Wylie and others boarded a Graham vessel to be transported to their offshore work site. As the weather worsened, Wylie sought relief from sea sickness on the vessel's bridge. While seated on the bridge, the vessel pitched and lurched violently, throwing Wylie from his seat. Wylie landed on his back with such force that he sustained a compression fracture to one of his first lumbar vertebra. He was hospitalized and treated for his back injury. Wylie eventually returned to work for Wood Group but his back injury precluded him from performing offshore work.

In August of 1995, Wylie filed a personal injury lawsuit against Hess, Graham, and others for the injuries he sustained on Graham's vessel ("the Wylie lawsuit"). On January 12, 1996, Hess filed a Third Party Petition against Wood Group seeking contribution and/or indemnification pursuant to the Master Service Contract. Hess later amended its action to demand the cost of defense and indemnity for Graham and its employees ("the Indemnity lawsuit").

On September 20, 1996, Hess and Graham filed a Motion for Partial Summary Judgment to enforce their indemnity rights against Wood Group under the Master Service Contract. Wood Group filed a response to the motion asserting that (1) Hess and Graham's motion was not ripe; (2) there was no issue of material fact as to the cause of Wylie's injury; (3) the indemnity was premature; and (4) Hess was attempting to pass its contractual obligation of indemnity with Graham to Wood Group. A month later, Wood Group moved for partial summary judgment on the grounds that (1) Hess was precluded from passing to Wood Group its contractual obligation of indemnity owed to Graham; (2) there was no contractual basis for Wood Group to indemnify Graham; (3) there was no contractual obligation be-

tween Graham and Wood Group that satisfies the express negligence doctrine; and (4) Hess's claim for indemnity for the negligence of Graham violates section 417.004 of the Texas Labor Code.

The trial court heard argument on the summary judgment motions on November 26, 1996 and on February 11, 1997. On August, 20, 1997, the trial court entered an interlocutory order granting partial summary judgment in favor of Hess on its contractual liability claim against Wood Group to indemnify Hess's negligence in the Wylie lawsuit and for attorney's fees in defending Hess and pursuing the indemnity claim. In the same order, the trial court denied summary judgment on Hess's claims for indemnity based upon its obligation to defend and indemnify Graham on the ground that Hess could not pass through its indemnity obligations to Wood Group. The trial court also denied Graham's motion for partial summary judgment against Wood Group and granted Wood Group's motion for partial summary judgment against Graham on the ground that Graham and Wood Group lacked mutuality of obligation.

Thereafter, the Wylie lawsuit came to trial. Despite the trial court's ruling that Hess was entitled to defense and indemnity, Wood Group did not appear or participate in the trial. After one day of testimony, Hess settled the suit for $200,000. The trial court entered a take-nothing judgment in favor of Hess and Graham.

Subsequently, the Indemnity lawsuit came to trial before the bench. The trial court found the settlement amount paid by Hess was reasonable in light of Hess's liability exposure and was recoverable from Wood Group under the indemnity agreement in the Master Service Contract. The trial court also found that the attorney's fees incurred were reasonable, but apportioned fifty percent of those fees to Graham and denied Hess the recovery of that fifty percent from the Wood Group. It is from this judgment that Hess and Wood Group appeal.

On appeal, Hess contends the trial court erred in refusing to award it 100% of its attorney's fees and costs. In its first point of error, Hess complains about the award, which, apparently, was made because of the trial court's conclusion that Hess's right to indemnification from Wood Group did not extend to Hess's contractor, Graham. In its second point, Hess contends the trial court erred in (1) arbitrarily apportioning attorney's fees between Hess and Graham, and (2) denying Hess recovery of costs it incurred while defending the Wylie lawsuit and pursuing the Indemnity suit against Wood Group.

Wood Group also brings two points of error on appeal. In its first point, Wood Group complains of the trial court's judgment and challenges the sufficiency of evidence supporting the trial court's Findings of Fact and Conclusions of Law about the reasonableness of Hess's $200,000 settlement with Wylie. In its second point, Wood Group challenges the trial court's judgment and findings regarding the award of attorney's fees to Hess.

In the interest of judicial economy, we will address Hess's and Wood Group's second points of error together. However, we first consider Hess's first point of error.

### EXTENSION OF INDEMNITY AGREEMENT TO GRAHAM

In its first point of error, Hess contends that based on its disposition of Graham's and Wood Group's motion for partial summary judgment, the trial court erred in refusing to award it 100% of its attorney's fees and costs. Hess contends the trial court erred in denying Graham's motion for partial summary judgment and granting Wood Group's motion for partial summary judgment on the ground that Graham and Wood Group lacked mutuality of obligation. Hess claims instead that the trial court should have granted Graham's motion for partial summary judgment because the indemnity agreement between

Hess and Wood Group in the Master Service Contract expressly extends to Hess's contractors and Graham is a Hess contractor. As we explain below, Hess cannot complain about the trial court's failure to grant Graham's motion.

The record reflects that Hess, Graham, and their employees individually moved for partial summary judgment under the Master Service Contract on their contractual indemnity claims against third party defendant Wood Group. Although they filed one motion, pursuant to the indemnity agreement between Hess and Wood Group in the Master Service Contract, each movant sought partial summary judgment on their individual claim.

The record also reflects that the trial court disposed of the motions for partial summary judgment as to each movant individually. The trial court denied Graham's motion for partial summary judgment on its indemnity claim against Wood Group under the Master Service Contract, on the ground that it lacked mutuality of obligation with Wood Group, and granted Wood Group's motion on the same ground. The trial court granted Hess's motion for partial summary judgment as to its indemnity claim against Wood Group on its own behalf, but denied its claim on behalf of Graham on the ground that Hess could not pass through its indemnity obligations to Wood Group. The trial court likewise denied Wood Group's motion against Hess individually and granted Wood Group's motion against Hess on behalf of Graham on the same ground.

Hess does not dispute that it was obligated to defend and indemnify Graham under the Time Charter Agreement and does not challenge the trial court's disposition of its claim on behalf of Graham. Instead, Hess claims that the trial court erred in its disposition of Graham's and Wood Group's motions for partial summary judgment on Graham's claim for indemnity from Wood Group and that the trial court refused to award it all of the attorney's fees it incurred in defense of

Graham in the Wylie suit on the basis of this error.

■ We do not reach the merits of Hess's argument for several reasons. First, the trial court rendered partial summary judgment against Graham on Graham's individual motion, and not on Hess's claim on behalf of Graham, and Graham is not a party to this appeal. Second, the trial court disposed of Hess's indemnity claim on behalf of Graham on a different and unchallenged ground: it concluded that Hess could not pass onto Wood Group its contractual obligations owed to Graham. Finally, in awarding attorney's fees as the measure of damages in the Indemnity lawsuit, the trial court made no reference to its disposition of Graham's indemnity claim against Wood Group in its judgment or its Findings of Fact or Conclusions of Law. Because the record provides no basis from which Hess can appeal the disposition of Graham's individual claim, we overrule its first point of error.

### SUFFICIENCY CHALLENGES

■ In their remaining points of error, both Hess and Wood Group challenge the sufficiency of the trial court's findings of facts and conclusions of law regarding the reasonableness of the settlement and attorney's fees. Findings of fact in a bench trial have the same force and dignity as a jury verdict; thus an appellate court reviews sufficiency challenges to findings of fact by the same standards as applied in reviewing a jury's findings. *See Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex.1991). In reviewing for legal sufficiency, we consider only the evidence and inferences supporting the finding. *See Minnesota Mining and Mfg. Co. v. Nishika Ltd.*, 953 S.W.2d 733, 738 (Tex.1997). If more than a scintilla of probative evidence supports the finding, the no evidence challenge fails. *Id.* More than a scintilla of evidence exists where the evidence supporting the finding, as a whole, rises to a level that would enable reasonable and fair-minded people to differ

in their conclusions. *See Merrell Dow Pharmaceuticals, Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997), *cert. denied*, 523 U.S. 1119, 118 S.Ct. 1799, 140 L.Ed.2d 939 (1998). In reviewing for factual sufficiency, we weigh all of the evidence in the record and overturn the finding only if it is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *See Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex.1996).

██ The standard of review for conclusions of law is whether they are correct. *See Zieba v. Martin*, 928 S.W.2d 782, 786 n. 3 (Tex.App.—Houston [14th Dist.] 1996, no writ). Conclusions of law will be upheld on appeal if the judgment can be sustained on any legal theory supported by the evidence. *See Dickerson v. DeBarbieris*, 964 S.W.2d 680, 683 (Tex.App.—Houston [14th Dist.] 1998, no pet.); *Waggoner v. Morrow*, 932 S.W.2d 627, 631 (Tex.App.—Houston [14th Dist.] 1996, no writ). Thus, incorrect conclusions of law do not require reversal if the controlling findings of fact will support a correct legal theory. *See Dickerson*, 964 S.W.2d at 683.

### INDEMNITY FOR WYLIE SETTLEMENT

██ In its first point of error, Wood Group challenges the sufficiency of the evidence to support the trial court's findings and its judgment, which allowed Hess to recover from Wood Group the full amount of the $200,000 settlement with Wylie. Wood Group raises three arguments in claiming that Hess failed to meet its burden to show the settlement was reasonable, prudent and made in good faith under the circumstances as to Hess alone.

First, Wood Group argues that, by requiring it to indemnify Hess for the entire settlement, the trial court, in effect, allowed Hess to pass onto Wood Group its contractual indemnity obligations to Graham. However, in its Findings of Fact, the trial court found that evidence existed by which Hess could be liable to Wylie under a theory of negligence. Specifically,

the trial court found that Hess insisted on taking the voyage in spite of inclement weather, refused to fly Wylie to the drilling site by helicopter, and failed to direct the vessel to return to shore when it appeared existing weather conditions placed Wylie and other passengers in danger. The trial court found that the testimony presented on Wylie's behalf reflected that Wylie suffered damages in excess of $1,000,000. The trial court also found the $200,000 settlement to be reasonable in light of Hess's liability exposure, excluding any liability of Graham. In its Conclusions of Law, the trial court held Hess's settlement payment to Wylie was reasonable and made in good faith.

██ For a settling indemnitee to recover an amount of the settlement from its indemnitor, the indemnitee must show its potential liability to a claimant and show that the settlement was reasonable, prudent, and made in good faith under the circumstances. *See Fireman's Fund Ins. Co. v. Commercial Standard Ins. Co.*, 490 S.W.2d 818, 824 (Tex.1972); *overruled on other grounds by Ethyl Corp. v. Daniel Constr. Co.*, 725 S.W.2d 705, 708 (Tex.1987). Wood Group claims that Hess failed to prove each of these elements to the trial court.

Wood Group, however, does not contend the evidence is insufficient to show Hess's potential liability to Wylie. Instead, Wood Group argues that the record reflects that Graham's potential liability to Wylie was greater than Hess's; therefore, it argues, the settlement cannot be reasonable as to Hess alone.

██ Questions regarding the reasonableness of a settlement in most personal injury cases are questions upon which the trier of fact must be guided solely by expert testimony. *See Arce v. Burrow*, 958 S.W.2d 239, 252 (Tex.App.—Houston [14th Dist.] 1997), *rev'd in part on other grounds*, 997 S.W.2d 229 (Tex.1999). An expert's opinion testimony can defeat a claim as a matter of law. *See*

*Burrow v. Arce,* 997 S.W.2d 229, 235 (Tex. 1999). However, it is the basis of the expert witness's testimony, and not his qualifications or bare opinions alone, that can settle an issue as matter of law. *Id.*

The record, here, reflects more than a scintilla of expert testimony as to the reasonableness of the Wylie settlement as it relates to Hess's liability alone. Hess's expert, John Gilbert, testified that the deposition testimony of Wylie's medical [1] and economic [2] experts led him to value the case between $450,000 and $600,000. Based on this evaluation and facts from deposition testimony regarding Hess's decisions to continue in inclement weather and to travel by ship instead of helicopter, Gilbert attested that he concluded the settlement was reasonable in light of Hess's liability exposure. Although Gilbert opined that he would have divided liability equally between Hess and Graham, he also attested that the settlement was reasonable for Hess alone and reasonable for the case in toto.

Wood Group's expert, Donald Weitinger, testified that Hess could have extinguished its liability to Wylie for a fraction of the $200,000 settlement payment. Weitinger attested that he thought the $200,000 was not a ridiculous amount to settle Graham's liability, but more than what he would have been willing to pay. Weitinger opined that compression fractures "are not serious injuries outside something unusual in that regard, and generally they settle for well under $100,000." Although Weitinger's testimony conflicts with Gilbert's, the trial court's conclusion that the settlement was reasonable is not against the great weight and preponderance of the evidence as to be clearly wrong and unjust.

Second, Wood Group contends that Hess failed to establish that its settlement with Wylie was in good faith under the circumstances. In support of its argument, Wood Group relies on the holding of *H.S.M. Acquisitions, Inc. v. West,* 917 S.W.2d 872, 880 (Tex.App.—Corpus Christi 1996, writ denied). In *H.S.M Acquisitions, Inc.,* the court of appeals found the terms of an agreed judgment between a claimant and indemnitee to be collusive, in part because the settling parties agreed to keep the terms of the judgment confidential and not to file an abstract or other public notice of the judgment. *Id.*

The facts establishing bad faith in *H.S.M Acquisitions* are distinguishable from this case. Indeed, the facts establishing collusion and fraud in *H.S.M Acquisitions* are much more egregious than here, where we have the mere failure of the settling parties to disclose the terms of the settlement agreement. *See id.* at 880–81. Here, unlike *H.S.M. Acquisitions,* the expert testimony establishes that Hess's settlement was reasonable as to Hess alone; this testimony also supports a conclusion that the settlement was made in good faith as to Hess alone. Here, unlike *H.S.M. Acquisitions,* there is no evidence of any agreement between Gilbert, Hess, or Graham to show the parties committed fraud on Wood Group or the trial court. Instead, there is more than a scintilla of evidence that Hess settled with Wylie in good faith and that Graham benefitted by the settlement. In addition, evidence of Hess's contractual obligation to indemnify Graham and Graham's release from liability as a result of Hess's settlement with Wylie does not render the trial court's good faith finding clearly wrong and unjust.

---

1. Wylie's medical expert gave him a 14% impairment rating and placed restrictions on his ability to lift items. In evaluating the case, Gilbert testified that he considered the credibility of Wylie's expert based on his experience with juries and that Wylie sustained a compression fracture and was not able to work for several months.

2. Wylie's economic expert initially opined that Wylie sustained economic damages of $1.2 million but later revised the amount to $450,000.

■ The third argument Wood Group raises under point of error one is that the settlement was not prudent under the circumstances of the case because the amount of money Hess may recover from Wood Group is limited by the indemnity contract which provides Hess indemnity for its own actions, not for its contractual liabilities. Wood Group contends the trial court should have determined the liability of Hess and Graham and divided the settlement award according to the liability of the respective defendants. The parties, however, settled before the close of trial, too early for the trial court to make a determination of liability. Even though Hess's expert opined that he would apportion liability between Hess and Graham, he also opined that the settlement was reasonable as to Hess alone given its liability exposure and the value of the case. Moreover, the settlement arose after Wylie presented potentially damaging evidence about Hess's role in the accident.

In summary, the evidence is legally and factually sufficient to support the trial court's fact findings and conclusions of law that the settlement was reasonable and made in good faith. Therefore, we overrule Wood Group's first point of error.

## SEGREGATION AND APPORTIONMENT OF ATTORNEY'S FEES

In its second point of error, Wood Group contends the trial court erred in awarding Hess attorney's fees because Hess failed to establish that the Wylie settlement was reasonable. In the alternative, Wood Group complains that Hess failed to segregate its fees from those it incurred on behalf of Graham's defense and the trial court's award of attorney fees is unsupported by the evidence and contrary to the rule of law.

■ For two reasons, we do not reach the merits of either of Wood Group's arguments. First, we find sufficient evidence to support the trial court's finding that the Wylie settlement was reasonable. Second, Wood Group waived review of its alternative argument. Wood Group did not object to Hess's failure to segregate fees at trial or by post-judgment motion. *See O'Farrill Avila v. Gonzalez,* 974 S.W.2d 237, 249 & n. 5 (Tex.App.—San Antonio 1998, pet. denied). Accordingly, we overrule Wood Group's second point of error.

■ Hess also complains about the award of attorney's fees in its second point of error. Hess contends there is no legal or factual support for the trial court's apportionment of attorney's fees because the attorney's fees it incurred on its behalf and those it incurred in Graham's representation arose out of the same transaction and were so interrelated that it could not segregate the fees.

■ A trial court may award attorney's fees only if they are reasonable and necessary for the prosecution of the suit. *See Stewart Title Guar. Co. v. Sterling,* 822 S.W.2d 1, 10 (Tex.1991). To show the reasonableness and necessity of attorney's fees, the plaintiff must show that the fees on a claim which allows recovery of such fees were incurred while suing the defendant sought to be charged with the fees. *Id.* Generally, when a plaintiff seeks to recover attorney's fees in cases where there are multiple defendants, and one or more of those defendants have made settlements, the plaintiff must segregate the fees owed by the remaining defendants from those owed by the settling defendants so that the remaining defendants are not charged fees for which they are not responsible. *Id.* at 10–11. "Likewise, when one or more causes of action for which attorney's fees are not permitted by statute or contract are alleged in a petition, and are investigated, and pursued at trial, it is incumbent upon the party asserting those causes of action to segregate them from those for which attorney's fees can be recovered." *Aetna Cas. & Sur. v. Wild,* 944 S.W.2d 37, 40–41 (Tex.App.—Amarillo 1997, writ denied) (citing *Int'l Sec. Life Ins. Co. v. Finck,* 496 S.W.2d 544, 546–47 (Tex.1973)). The exception to this

duty to segregate arises when the attorney's fees are incurred in connection with claims arising out of the same transaction and are so interrelated that the prosecution or defense of such claims entails proof or denial of essentially the same facts. *See Stewart Title Guar. Co.*, 822 S.W.2d at 11. Therefore, when the causes of action involved in a suit are dependent upon the same set of facts or circumstances and are intertwined to the point of being inseparable, the party suing for attorney's fees may recover the entire amount covering all claims. *Id.*

In its findings of fact, the trial court determined that reasonable attorney's fees incurred by Hess on behalf of Graham's and Hess's defense against Wylie's negligence claims totaled $141,743.75; it attributed one-half of the fees to the defense of Hess. The trial court also held in a conclusion of law that the apportioned fees were reasonable.

As explained below, we agree with Hess that the finding on attorney's fees is not supported by the record. The only evidence regarding a fifty percent apportionment of attorney's fees came from Hess's own expert, Gilbert, and his testimony does not support the trial court's finding of fact or its conclusion of law. In response to a question regarding the parties' liability exposure, Gilbert attested that he would split *liability* fifty-fifty between Hess and Graham. Later, when asked if it would be reasonable to attribute fifty percent of the *attorney's fees* to each defendant based on their potential exposure, Gilbert testified as follows:

> My evaluation was done on the overall reasonableness of the settlement and in looking at it beginning to end and saying that that's a reasonable fee to defend this case. I have not tried to go through the stack of documents and separate each of those out. Taking the analogy that you have presented to me in going back to what I had testified to before, if I got back to a $^{50}/_{50}$ and then somebody asked me to break out the attorney's

fees, I would follow that same $^{50}/_{50}$ pattern in connection with it.

Gilbert testified that he did not segregate fees between the co-defendants because in the bills that he reviewed, there was no way to break out the work done on behalf of Graham and that done on behalf of Hess.

Instead of apportioned fees, Hess contends it is entitled to all of its attorney's fees. Hess claims the attorney's fees it incurred on its behalf and those it incurred in Graham's representation arose out of the same transaction and were so interrelated that it could not segregate the fees. Although Hess concedes that its liability to Wylie would turn on fact findings different from those necessary to the determination of Graham's liability, it maintains that segregation of fees was not required because its attorneys had to develop the same set of facts, attend the depositions of the same witnesses, conduct the same discovery, and prepare for the same trial in defending Graham as they did in Hess's own defense.

Hess presented no evidence of the discovery it conducted, the depositions it attended, or the preparations it made in its own representation and in representing Graham during the Wylie lawsuit. Although there is some evidence in the record that the same set of facts gave rise to both Hess's and Graham's potential liability to Wylie, there is no evidence that the claims against Hess and Graham were intertwined to the point of being inseparable. Without more, Hess was not entitled to recover all of its attorney's fees. In conclusion, the trial court erred in apportioning attorney's fees because no evidence was presented to warrant a fifty-fifty split of fees between Hess and Graham. We sustain Hess's second point of error for this reason and do not sustain Hess's claim that it was entitled to all of the fees.

In summary, the evidence in the record does not support a finding that Hess falls within the exception to the duty to segregate attorney's fees. Under such circum-

stances, it is appropriate to remand the issue to the trial court. *See Texarkana Memorial Hosp. v. Murdock,* 946 S.W.2d 836, 841 (Tex.1997). Accordingly, we affirm the judgment of the court below, in part, and reverse and remand the cause, in part, to the trial court for a determination of Hess's attorney's fees.