Affirmed in Part, Reversed and Remanded in Part, and Opinion filed January 29, 2009.

 

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00716-CV

____________

 

CLEARVIEW PROPERTIES, L.P.; MICHAEL
STARCHER, TRUSTEE FOR THE CROWN HILL TRUST; CRAIG WALKER, D/B/A CLEARVIEW
PROPERTIES, L.P.; AND CLEARVIEW INVESTMENTS, LTD., Appellants

 

V.

 

PROPERTY TEXAS SC ONE CORP.,
CLARION PARTNERS, L.L.C.,

GRANITE PARTNERS, L.L.C., TRIPLE
NET PROPERTIES, L.L.C., 

T. REIT, L.P., AND T. REIT, INC., Appellees

 



 

On Appeal from the 270th
District Court

Harris County, Texas

Trial Court Cause No. 2003-22196

 



 

O P I N I O N








Appellants Clearview Properties, L.P.; Michael Starcher,
Trustee for the Crown Hill Trust; Craig Walker, d/b/a Clearview Properties,
L.P.; and Clearview Investments, Ltd. (collectively AClearview@) appeal from the
trial court=s order granting summary judgment on their claims
against appellees Property Texas SC One Corp., Clarion Partners, L.L.C.,
Granite Partners, L.L.C., Triple Net Properties, L.L.C., T. Reit, L.P. (ATRL@), and T. Reit,
Inc. (ATRI@) and awarding
attorney=s fees in favor of
Property Texas and TRL.  We affirm the trial court=s summary judgment
on Clearview=s claims and the attorney=s fees award in
favor of Property Texas but reverse the attorney=s fees award in
favor of TRL and remand for further proceedings.

                                                I.  Background

Property Texas owned an office building in Houston that it
leased to the Federal Bureau of Investigation (AFBI@), and it employed
Clarion as its property manager.  Property Texas decided to sell the building
and hired Granite as its real estate broker.  In 2002, Clearview signed a
contract with Property Texas to buy the property.  The parties agreed to amend
the contract several times, with the fifth and final amendment (Athe fifth
amendment@) being executed on January 17, 2003.  The fifth
amendment required Clearview to obtain financing to purchase the building by
January 29, 2003, and if Clearview could not do so, it could terminate the
contract and recover only its escrow deposit.

Clearview planned to purchase the property and then
immediately Aflip@ it to TRL for a profit.  To this end,
Clearview entered into a separate contract with TRL.  However, Clearview was
not able to obtain financing because Deutsche Bank, the prospective financer,
would not make the loan itself and could not convince another lender to accept
the loan as part of a loan sales package because it was uncomfortable with the
entire flip transaction.  Consequently, neither the Property Texas/Clearview
contract nor the Clearview/TRL contract were ever consummated.








Two events happened that are at the center of this
litigation.  First, Clearview learned on January 30, 2003 for the first time
about an amendment to the Property Texas/FBI lease (ASLA 12@).  Clearview
asserts that SLA 12 was a scam created to conceal falsified documents submitted
in connection with reimbursement for finish-out space leased by the FBI. 
Clearview also asserts that if it had known of SLA 12, it would not have
entered into the fifth amendment to its contract with Property Texas.  Second,
Property Texas learned of Clearview=s deal to
immediately resell the property to TRL when one of its employees, in the course
of conducting due diligence on the Clearview/TRL deal, told Triple Net, an
affiliate of TRL, of the deal, and Triple Net then contacted the building=s property
manager, who told Granite.  According to Clearview, this knowledge made
Property Texas reluctant to enter into another contract amendment to extend the
closing time when Clearview had not yet secured financing by the due date and
instead enter into a sales contract with Triple Net, though this sale never
went through either.

Clearview sued nearly everyone involved in the proposed
sale of the building.  As relevant to this appeal,[1]
Clearview sued Property Texas for breach of contract, arguing that its failure
to disclose SLA12 earlier breached its contractual obligations to make
reasonable efforts to furnish all amendments to the Property Texas/FBI lease
and to promptly correct any inaccuracies in prior representations.  Clearview
also asserted claims against Property Texas, Clarion, and Granite under various
fraud theories, claiming that they intentionally failed to disclose SLA 12 and
that if Clearview had known about SLA 12, it would not have entered the fifth
amendment, which required Clearview to pay $20,000 in consideration and limited
its damages to the return of escrow money.  Finally, Clearview sued TRL, TRI
(which is TRL=s general partner), and Triple Net (collectively Athe Triple Net
defendants@), arguing that the chain of events that led to
Property Texas=s discovery of the Clearview/TRL contract constituted
breach of contract and tortious interference with a prospective contract.

Property Texas, Clarion, Granite, and the Triple Net
defendants moved for traditional and no-evidence summary judgment, which the
trial court granted.  The trial court also awarded attorney=s fees to Property
Texas and TRL pursuant to their attorney=s fees
counterclaims for prevailing in the breach of contract claim.  This appeal
followed.








                                                    II.  Analysis

A.  Summary Judgment

In its first issue, Clearview argues the trial court erred
in granting summary judgment on its fraud, breach of contract, and tortious
interference claims against Property Texas, Clarion, Granite, and the Triple
Net defendants.  Appellees
moved for summary judgment on both traditional and no evidence grounds.  See
Tex. R. Civ. P. 166a(c),
166a(i).  To prevail on a traditional motion for summary judgment, the movant
must show that there is no genuine issue of material fact and that he is
entitled to judgment as a matter of law.  Tex.
R. Civ. P. 166a(c); Sw. Elec. Power Co. v. Grant, 73 S.W.3d 211,
215 (Tex. 2002).  A defendant moving for summary judgment must conclusively
negate at least one essential element of each of the plaintiff=s causes of action or conclusively
establish each element of an affirmative defense.  Sci. Spectrum, Inc. v.
Martinez, 941 S.W.2d 910, 911 (Tex. 1997); Shirvanian v. DeFrates,
161 S.W.3d 102, 106 (Tex. App.CHouston [14th Dist.] 2004, pet. denied).  When we review a
summary judgment, we take as true all evidence favorable to the non‑movant;
we also indulge every reasonable inference and resolve any doubts in favor of
the non‑movant.  Grant, 73 S.W.3d at 215.  As to a no evidence
summary judgment motion, the movant must state the specific elements of a cause
of action for which there is no evidence.  Cuyler v. Minns, 60 S.W.3d
209, 212 (Tex. App.CHouston [14th Dist.] 2001, pet. denied).  If the movant has
identified specific elements he claims lack evidence, we must then determine de
novo whether the non‑movant has produced more than a scintilla of
probative evidence to raise a genuine issue of material fact.  Allen v.
Connolly, 158 S.W.3d 61, 64 (Tex. App.CHouston [14th Dist.] 2005, no pet.).

1.  Fraud








Clearview sued Property Texas, Clarion, and Granite under
various fraud theories, arguing that they intentionally prevented Clearview
from knowing about SLA 12.  Property Texas and Clarion moved for summary
judgment, arguing, among other things that there was no evidence that Property
Texas and Clarion knowingly concealed or misrepresented SLA 12 or intended to
deceive Clearview.  Granite similarly moved for summary judgment, arguing that
there was no evidence that Granite knew of SLA 12 or intended to deceive
Clearview and that the evidence conclusively established the contrary.  The
trial court granted summary judgment against Clearview on these claims.

On appeal, Clearview argues that if it had known about SLA
12, it would not have entered into the fifth amendment to its contract with
Property Texas,[2]
which cost it $20,000 in consideration and limited its remedies to return of
its escrow money.  Clearview=s argument is unclear as to whether it is
claiming that there was an affirmative representation that SLA 12 did not
exist, that there was a failure to disclose SLA 12, or both.  Under either
theory, Clearview must prove both knowledge of SLA 12 and intent.  See Dow
Chem. Co. v. Francis, 46 S.W.3d 237, 242 (Tex. 2001).  Clearview failed to
create a fact issue as to either of these.

As to knowledge, Clearview argues that Property Texas
signed SLA 12 in 2000 so it must have known of it, but the Property Texas/FBI
lease had numerous amendment documents, and there is no evidence that anyone at
Property Texas involved in the transaction with Clearview actually knew of SLA
12 and was withholding that information.  Clearview points to evidence that
Granite knew of SLA 12 before the date Clearview signed the fifth amendment,
but that evidence actually shows that Granite knew only of an unsigned,
non-binding copy of the SLA 12.  Thus, Clearview had no evidence creating a
fact issue as to whether Clarion or Granite had knowledge of a signed, final
version of SLA 12 before Clearview signed the fifth amendment.








As to intent, Michael Starcher, who was Clearview=s principal
representative and decision maker regarding the property, testified in his
deposition that neither Property Texas, Clarion, nor Granite intended to injure
Clearview with respect to SLA 12:

Q:      Mr. Starcher, in, in referring to this
misrepresentation that you claim was made to you about the SLA 12 not existing,
you don=t think that [Property Texas],
Clarion or Granite did it to intentionally hurt Clearview or you, do you?

A:      I don=t think so.

Q:      They didn=t do it out of C well, they didn=t C according to you, this
misrepresentation was more a, a problem of their not doing their due diligence,
right?

A:      I believe that=s C yes.

Q:      You don=t think that this misrepresentation was malicious, do you?

A:      I don=t believe so.

Q:      . . . . You don=t think that they had an intent to
deceive you by this misrepresentation of the SLA 12 C regarding the SLA 12? 

A:      No.

Q:      That it was more just negligence on their
part?

A:      Yes.

. . . . 

Q:      . . . .  Are you
maintaining in this lawsuit, is one of your contentions in his lawsuit that
Granite or any of the other defendants fraudulently concealed the existence of
SLA 12 from plaintiff?         

A:      No.

Q:      And then you=ve answered my next question is C which is:  You don=t have any evidence that Granite or
any of the other defendants fraudulently concealed the existence of SLA 12 from
plaintiff, correct?

A:      Yes.

. . . . 








Q:      Do you believe C are you contending that [Granite]
intentionally misrepresented to you the ex C the nonexistence of SLA 12? 

A:      I don=t believe so.

Q:      Okay.  Do you believe that any of the
defendants intentionally misrepresented to plaintiff the nonexistence of SLA
12?

A:      I don=t C no.

 

In an attempt to undo this damage, Starcher submitted a
post-deposition affidavit.  He stated that Property Texas and Clarion produced Anearly 1,000 pages
of e-mail correspondence and other documents@ unbeknownst to
him on the day of his deposition and that based on Aa brief
opportunity to review some of the newly-produced documents,@ he believes that
the defendants have engaged in intentional Afraudulent
activity@ and he would Anow answer those
deposition questions . . . differently.@  This affidavit
is insufficient to overcome Starcher=s deposition
testimony and create a fact issue.  Starcher does not identify which of the
1,000 pages of documents he reviewed, specify which deposition questions he
would have answered differently, or state what his new answers would be. 
Without such details, Starcher=s affidavit statements are merely
conclusory and thus constitute no evidence.  See Coastal Transp. Co. v.
Crown Cent. Petroleum Corp., 136 S.W.3d 227, 232 (Tex. 2004).          Because
Clearview did not create a fact issue on the knowledge element of its fraud
claims against Clarion, and Granite, or the intent element against Property
Texas, Clarion, and Granite, the trial court did not err in granting summary
judgment on these claims.

2.  Breach of Contract Against Property Texas 








Clearview sued Property Texas for breach of contract
arising from the SLA 12 issue, arguing that Property Texas breached its
obligations to make reasonable efforts to furnish all amendments to the
Property Texas/FBI lease and to promptly correct any inaccuracies in prior
representations.  Property Texas argued that it was entitled to summary
judgment because (1) Clearview=s failure to secure financing for the deal
caused its damages, rather than any conduct by Property Texas, and (2) under
the fifth amendment to the contract, Clearview=s sole remedy
under the contract is return of its escrow money, which it received.  We agree
with Property Texas.

If the alleged breach of contract did not cause the
plaintiff=s damages, then there can be no recovery for breach of
contract. See Tidwell Props., Inc. v. Am. First Nat=l Bank, No.
14-04-00120-CV, 2006 WL 176862, at *3 (Tex. App.CHouston [14th
Dist.] Jan. 26, 2006, no pet.) (mem. op.) (stating that absence of causal
connection between alleged breach and damages sought precludes recovery for
breach of contract); Abraxas Petroleum Corp. v. Hornburg, 20 S.W.3d 741,
758 (Tex. App.CEl Paso 2000, no pet.) (same).  It is undisputed that
Deutsche Bank, the only prospective financer, was unwilling to finance the
transaction and that, according to Deutsche Bank=s representative=s testimony, this
decision had absolutely nothing to do with SLA 12.  Thus, regardless of
Property Texas=s actions, the contract would not have been
consummated.  See Tidwell Props., 2006 WL 176862, at *3B5 (concluding that
failure to disclose sublease did not cause breach of contract damages because
deal fell through for reasons independent of failure to notify).  Further, the
fifth amendment limited Clearview=s recovery to
return of its escrow money, precluding its breach of contract claim in this
suit as well.  Clearview argues that we cannot consider the effect of the fifth
amendment because it was fraudulently induced to enter into the fifth
amendment, but we have already rejected this argument.  For these reasons, the
trial court did not err in granting summary judgment on Clearview=s breach of
contract claim against Property Texas.

3.  Claims against Triple Net defendants








Clearview sued TRL for breach of contract, arguing that
when TRL=s employee, in the
course of conducting due diligence on its deal with Clearview, contacted Triple
Net, leading to a series of contacts resulting in Property Texas=s discovery of the
flip deal, TRL breached the non-contact and nondisclosure obligations in its
contract with Clearview.  However, as with Clearview=s contract claim
against Property Texas, because the deal fell through for reasons independent
of any of TRL=s conduct, TRL was not the cause of any damage to
Clearview, and its claim was properly dismissed.  See Tidwell Props.,
2006 WL 176862, at *3; Abraxas Petroleum, 20 S.W.3d at 758.

Clearview asserted a claim against Triple Net for tortious
interference with prospective contract based on this same conduct, arguing that
the conduct leading to Property Texas=s discovery of the
Clearview/TRL contract interfered with Clearview=s ability to
negotiate future contract extensions and amendments with Property Texas.  To
support a claim for tortious interference with prospective contract, the
plaintiff must prove that the defendant=s conduct was Aindependently
tortious,@ that is, conduct Athat would violate
some other recognized tort duty.@  Wal-Mart
Stores, Inc. v. Sturges, 52 S.W.3d 711, 713 (Tex. 2001).  The conduct at
issue here was part of the due diligence necessary to determine flood insurance
issues, and Clearview makes no argument nor presents any evidence that this
conduct, which was necessary to close the transaction, violated any recognized
tort duty.  Thus, the trial court did not err in granting summary judgment on
this claim.

Because Clearview asserted liability against TRI based
solely on TRI being TRL=s general partner, the trial court did not
err in dismissing all claims against TRI when it properly dismissed all claims
against TRL.

The trial court did not err in granting summary judgment
against Clearview on its claims against Property Texas, Clarion, Granite, and
the Triple Net defendants, and we overrule Clearview=s first issue.

B. 
Attorney=s Fees

1.  The trial court properly rejected Clearview=s affirmative
defenses.








After the trial court granted summary judgment for Property
Texas, Clearview filed an answer to Property Texas=s attorney=s fees
counterclaims, asserting as Aaffirmative defenses@ breach of
contract, fraud, and estoppel based on the failure to disclose the existence of
SLA 12.  Property Texas moved for summary judgment on these affirmative
defenses and set the motion for hearing on October 14, 2005.  This motion was
set for a hearing several times and moved at appellants= request. 
Finally, with the hearing set for December 16, 2005, appellants mailed their
summary judgment response on December 9, 2005.  Four days before the scheduled
summary judgment hearing, the court held a pretrial hearing in preparation for
the attorney=s fee trial.  Property One requested that the court
consider its summary judgment motion as a pretrial matter.  The court refused
to consider the motion but ruled that because its order granting summary
judgment for Property Texas had already decided the same issues now raised as
affirmative defenses, those issues would be excluded from consideration at
trial.








In its second issue, Clearview argues that the trial court
erred in holding that the affirmative defenses were meritless as a matter of
law and in essentially ruling on Property Texas=s summary judgment
motion before the scheduled summary judgment hearing and before receiving its
summary judgment response.  We disagree.  The trial court had already granted
summary judgment against Clearview on its fraud and breach of contract claims
against Property Texas.  Furthermore, although the summary judgment did not
explicitly rule on any estoppel theory, because estoppel shares the elements of
a knowing false representation with fraud, see Oldfield v. City of
Houston, 15 S.W.3d 219, 228 (Tex. App.CHouston [14th
Dist.] 2000, pet. denied), the summary judgment order was broad enough to cover
this later-pleaded affirmative defense.  Cf. Ortiz v. Collins, 203
S.W.3d 414, 423 (Tex. App.CHouston [14th Dist.] 2006, pet. denied)
(holding summary judgment broad enough to cover later-pleaded cause of action
having common element with claim covered in summary judgment).  Clearview does
not argue otherwise in its brief and acknowledged at oral argument that the
summary judgment covered the breach of contract and fraud affirmative theories
and that estoppel had elements in common and was based on the same factual
basis as the other theories in the summary judgment.  Clearview has not shown
that the trial court=s ruling would have been different if it
had waited to rule until after receiving appellants= response.  We
hold the trial court did not err in refusing to consider at the attorney=s fees trial
affirmative defenses that it had already dismissed on summary judgment. 
Clearview=s second issue is overruled.

2.  Attorney=s fees against
Starcher and Walker were appropriate.

Property Texas brought a counterclaim for attorney=s fees against
Clearview L.P. and Clearview Ltd.  Property Texas determined during Starcher=s deposition that
during the relevant time frame, Clearview L.P. had not filed a certificate of
limited partnership with the state.  Instead, Starcher, as trustee of the Crown
Hill Trust, was a fifty/fifty partner with Craig Walker in Clearview L.P. 
Three days later, Property Texas filed an amended counterclaim, naming AMichael Starcher,
Trustee for the [Crown Hill] Trust and Craig Walker d/b/a Clearview Properties
L.P.@ as a
counter-defendant, along with Clearview Ltd.  Thus, Clearview L.P. was no
longer named as an independent counter-defendant but only as the d/b/a for
Starcher and Walker.  Clearview L.P. filed an answer naming itself in the
caption of the pleading and describing itself as a counter-defendant.  No
portion of this pleading or any other pre-pleading document asserted any defect
in the parties or was verified.  See Tex.
R. Civ. P. 93 (challenges to capacity or allegations of defect of
parties must be verified).  When the trial court awarded attorney=s fees to Property
Texas, it ordered that Property Texas could recover jointly and severally from
Starcher and Walker d/b/a Clearview L.P. and Clearview Ltd.








In its third issue, Clearview argues that the trial court
erred in rendering judgment against Starcher and Walker for attorney=s fees because
they were neither served nor appeared.  See Tex. R. Civ. P. 124 (AIn no case shall
judgment be rendered against any defendant unless upon service, . . . or upon
an appearance by the defendant . . . except where otherwise expressly provided
by law or these rules.@).  We conclude Starcher and Walker did
not need to be served.  This case involves a misnomer situationCwhere the correct
party is sued but under the wrong legal name.  See Chilkewitz v. Hyson,
22 S.W.3d 825, 828 (Tex. 1999); Riston v. Doe, 161 S.W.3d 525, 528 (Tex.
App.CHouston [14th
Dist.] 2004, pet. denied).  Property Texas sued the correct party, Clearview
L.P., but under the wrong legal name, because the certificate of limited
partnership had not been filed.  In its amended counterclaim filed after learning
this information in Starcher=s deposition, Property Texas changed the
party designation from Clearview L.P. to Starcher and Walker d/b/a Clearview
L.P.  A second service of citation after discovery of a mistake is not required
in misnomer cases.  Wilkins v. Methodist Health Care Sys., 108 S.W.3d
565, 570 (Tex. App.CHouston [14th Dist.] 2003), rev=d on other grounds, 160 S.W.3d 559
(Tex. 2005).  Thus, the judgment is not invalid based on lack of service.

Alternatively, we conclude that Clearview L.P. appeared on
behalf of Starcher and Walker.  When Clearview L.P., who was no longer being
independently sued but named only as the d/b/a of Starcher and Walker, then
answered in its own name, without alleging any defect in the parties, it
answered on behalf of Starcher and Walker.  Indeed, it could not have been
answering on its own behalf because it was no longer being independently sued. 
Because the answer was not verified and did not raise any defense regarding
capacity or other party defect, any such argument that it was not answering for
Starcher and Walker has been waived.  See Tex. R. Civ. P. 93; Dolenz v. Vail, 143 S.W.3d 515,
517B18 (Tex. App.CDallas 2004, pet.
denied).[3] 
An answer constitutes a general appearance, see Baker v. Monsanto Co.,
111 S.W.3d 158, 160B61 (Tex. 2003), and thus the judgment in
not invalid based on lack of appearance.

Finally, Clearview asserts in its brief that even if
Starcher and Walker had appeared and been served, Athere is not
legally or factually sufficient evidence that they have any responsibility for
the attorneys= fees awarded.@  This sentence is
the full extent of the argument on this issue.  Without analysis, argument, or
citation to evidence or authority, this argument is waived.  See Tex. R. App. P. 38.1(h); San Saba
Energy, L.P. v. Crawford, 171 S.W.3d 323, 338 (Tex. App.CHouston [14th
Dist.] 2005, no pet.).








We overrule Clearview=s third issue.

3.  TRL=s attorney=s fees were
appropriate

TRL was not named as a party to the suit until over a year
into the litigation.  Prior to that, Clearview sued Triple Net and a related
entity not relevant to this appeal for tortious interference with existing
contract, breach of contract (though none of the defendants were party to the
contract), and conspiracy to tortiously breach the contract.  When Clearview
brought TRL into the suit, it sued TRL for breach of contract (and dropped the
contract claims against the others) and conspiracy, added a claim for tortious
interference with prospective contract against Triple Net, and asserted
liability against TRI as a general partner.  TRL filed its answer on July 6,
2005, after discovery was virtually complete and approximately one month before
the trial court granted summary judgment in favor of the Triple Net defendants.

TRL counterclaimed for attorney=s fees based on a
provision in its contract because it was a prevailing party in the breach of
contract action.  At the attorney=s fees trial, TRL=s counsel, who
also represented the other Triple Net defendants, presented evidence of
$212,780.50 in reasonable and necessary attorney=s fees for
representing all of the Triple Net defendants since the inception of the
litigation.  The trial court awarded $211,599.33, or 99.4% of what was
requested, based on the trial court=s finding that all
of Clearview=s claims against the Triple Net defendants Aarise out of the
same transaction and are so interrelated and inextricably intertwined that the
defense entails denial of the same facts@ and therefore TRL=s attorney=s fees cannot be
segregated.








In its fourth issue, Clearview challenges the legal and
factual sufficiency of the evidence to support the trial court=s attorney=s fees award to
TRL, arguing that TRL was not entitled to essentially the full amount of fees
incurred since the litigation began.  Clearview asserts that TRL was required
to segregate its fees incurred (1) against the other Triple Net defendants (who
have no basis for recovering attorney=s fees) and (2) in
litigating claims other than breach of contract, which is the only claim for
which fees are recoverable.[4]

The trial court=s decision as to
whether segregation is required is a question of law we review de novo.  See
CA Partners v. Spears, No. 14-07-00057-CV, __ S.W.3d __, 2008 WL 3931401,
at *21 (Tex. App.CHouston [14th Dist.] Aug. 26, 2008, no
pet.).  When a lawsuit involves multiple claims or parties, the proponent of
attorney=s fees must
segregate recoverable fees from those incurred by parties or on claims for
which fees are not recoverable.  See Tony Gullo Motors I, L.P. v. Chapa,
212 S.W.3d 299, 313 (Tex. 2006); Stewart Title Guar. Co. v. Sterling,
822 S.W.2d 1, 10B11 (Tex. 1991); Willis v. Donnelly,
118 S.W.3d 10, 45B46 (Tex. App.CHouston [14th
Dist.] 2003), rev=d in part on other
grounds, 199 S.W.3d 262 (Tex. 2006).  Attorney=s fees that relate
solely to a claim for which fees are unrecoverable must be segregated.  Chapa,
212 S.W.3d at 313; CA Partners, 2008 WL 3931401, at *22.  However, Awhen discrete
legal services advance both a recoverable and unrecoverable claim[,] . . . they
are so intertwined that they need not be segregated.@  Chapa,
212 S.W.3d at 313B14; accord Broesche, 218 S.W.3d at
277.  In making this determination, we do not look at the legal work as a whole
but parse the work into component tasks, such as examining a pleading paragraph
by paragraph to determine which ones relate to recoverable claims.  See
Chapa, 212 S.W.3d at 313; 7979 Airport Garage, L.L.C. v. Dollar Rent A
Car Sys., 245 S.W.3d 488, 509 (Tex. App.CHouston [14th
Dist.] 2007, pets. denied).  The party seeking to recovery attorney=s fees bears the
burden of demonstrating segregation is not required.  CA Partners, 2008
WL 3931401, at *22.








We agree with Clearview that the trial court erred in
determining that TRL was not required to segregate any of its fees.  TRL
stresses, and the trial court found, that all of Clearview=s claims against
the Triple Net defendants arise from the same factual baseCthe communication
that led to Property Texas=s discovery of Clearview=s flip deal with
TRL.  However, as the supreme court made explicit in Chapa, A[i]ntertwined
facts do not make tort fees recoverable.@  Chapa,
212 S.W.3d at 313; accord CA Partners, 2008 WL 3931401, at *24.  In
examining the discrete pieces of legal work conducted in this litigation, it is
apparent that the trial court awarded attorney=s fees for work
attributable solely to unrecoverable claims.  For example, TRL recovered fees
for time spent responding to a request for production that was never served on
TRL, even though TRL was already a party to the suit at that time. 
Furthermore, Clearview never asserted tortious interference claims against TRL,
but TRL recovered fees based on drafting summary judgment pleadings (and
presumably accompanying legal research) regarding tortious interference claims. 
A[T]here is no
question those fees were not recoverable.@  Chapa,
212 S.W.3d at 313; see also CA Partners, 2008 WL 3931401, at *24
(concluding that attorney=s fees for drafting pleadings, performing
legal research, and conducting discovery for unrecoverable claims must be
segregated); 7979 Airport Garage, 245 S.W.3d at 509 (finding that fees
for drafting petition paragraph and jury charge relating to unrecoverable
claims must be segregated).

TRL further attempts to justify its failure to segregate by
arguing that Clearview did not clearly distinguish its claims among the Triple
Net defendants, thereby forcing TRL to defend various claims, and that breach
of contract was in the suit before TRL was sued because Clearview sued Triple
Net for breach of contract.  But just because the claims overlapped among the
Triple Net defendants does not mean that their legal defenses were identicalCTRL=s breach of
contract defense was different than Triple Net=s, which was based
on its status as a non-signatory.  Thus, the specific work performed to advance
these legal defenses that did not also advance TRL=s defenses is not
recoverable.








Finally, Clearview asserts that TRL should not be allowed
to recover any fees incurred prior to the date it was served in the lawsuit
because it could not incur recoverable fees before it was a party.  However,
because discovery was nearly finished before TRL was served and TRL used that
discovery in obtaining summary judgment, some of the work already completed
clearly saved TRL=s counsel from needing to perform that
work on TRL=s behalf.  If TRL can prove that discrete pieces of
legal work directly advanced its defense of a recoverable claim, then, under Chapa=s rationale, TRL
can recover fees for such work, even though it did Adouble service@ of defending
against another claim or for another party.  See Chapa, 212 S.W.3d at
313.

We conclude that Clearview did not meet its burden of
showing fees were not segregable either by party or claim.  However, because
the total amount of fees expended is some evidence of the proper amount of fees
to award, failure to segregate requires remand to enable TRL to properly prove
attorney=s fees.  See
Chapa, 212 S.W.3d at 314; CA Partners, 2008 WL 3931401, at *24. 
Thus, we sustain Clearview=s fourth issue.

                                                 III.  Conclusion

The trial court did not err in granting summary judgment
against Clearview on all its claims against Property Texas, Granite, Clarion,
TRL, TRI, and Triple Net.  The trial court also did not err in granting
attorney=s fees for
Property Texas.  However, we conclude the trial court did err in failing to
require TRL to segregate its attorney=s fees. 
Therefore, we reverse the trial court=s attorney=s fees award in
favor of TRL and remand for further proceedings consistent with this opinion. 
We affirm the remainder of the trial court=s judgment.

 

 

/s/      Leslie B. Yates

Justice

 

Panel consists of
Justices Yates, Anderson, and Brown.









[1]  Clearview also asserted other claims, including
negligent misrepresentation, conspiracy, and tortious interference with an
existing contract, but it has not pursued these claims on appeal.





[2]  Clearview first produced summary judgment evidence
of a link between the non-disclousre of SLA 12 and its entering into the fifth
amendment in an affidavit filed with its summary judgment reply.  The parties
have argued extensively as to whether this affidavit was timely and whether
this theory linking the SLA 12 with the fifth amendment is consistent with
Clearview=s pleadings, among other arguments.  We need not
decide whether we can appropriately consider this evidence and argument because
even if we do, Clearview=s claims fail for other reasons, as explained below.





[3]  A party defect argument was made in the trial court
for the first time after judgment was rendered, but this pleading also
contained no verification and thus was inadequate to properly raise the issue. 
See Tex. R. Civ. P. 93; Pledger
v. Schoellkopf, 762 S.W.2d 145, 146 (Tex. 1988).





[4]  TRL argues that Clearview waived its segregation
argument on appeal by failing to make it in the trial court.  However, in a
bench trial, failure to segregate can be preserved by a post-judgment motion,
as was done here.  See Amerada Hess Corp. v. Wood Group Prod. Tech., 30
S.W.3d 5, 13 (Tex. App.CHouston [14th Dist.] 2000, pet. denied); Baber v.
Pioneer Concrete of Tex., Inc., 919 S.W.2d 664, 668 (Tex. App.CFort Worth 1995, writ dism=d).